568 P.2d 1236

STATE of New Mexico ex rel. Thomas Ray NEWSOME, Jr., Petitioner-Appellant,

v.

Phillip ALARID, Director of Personnel, University of New Mexico, Respondent-Appellee.

No. 11207.

Supreme Court of New Mexico.

Sept. 26, 1977.

792

Michael G. Rosenberg, Albuquerque, for petitioner-appellant.

Rodey, Dickason, Sloan, Akin & Robb, W. A. Sloan, Carl H. Esbeck, Albuquerque, for respondent-appellee.

## OPINION

EASLEY, Justice.

Newsome, a student newspaper reporter at the University of New Mexico, applied for an alternative writ of mandamus against Alarid, personnel director of the university, seeking to gain access to the information contained in all non-academic staff personnel records, except that which is exempt from disclosure under the terms of § 71–5–1, N.M.S.A.1953 (Supp.1975). However, the alternative writ and the order to show cause that were issued spoke in terms of divulging "all personnel records" without reference to statutory exemptions. The trial court at the show-cause hearing quashed the writ and dismissed the petition. We affirm in part and reverse in part.

Newsome framed the issues by his requested conclusion of law asking that the court find that no portion of the personnel records of the employees was exempt under the disclosure statute or otherwise.

Alarid contended that confidential records are not "public records." The trial court agreed. Alarid claimed, and the trial court concluded, that information as to an employee's disabilities, illnesses, or injuries; type of military discharge; reason for leaving past employment or wanting to leave present employment; and arrest records were covered by the statutory exemptions or were of a sensitive and personal nature and should be kept confidential. The trial court concluded that the statutory exemptions cover letters of reference, matters of opinion such as answers to the questions "Would you rehire?" and "Why not hired?" and memoranda concerning disciplinary action.

Alarid testified that his office had thousands of personnel files to which Newsome was granted access by the alternative writ. He claimed that inspection should, therefore, be reasonable as to time, manner, and number of documents. The trial court so concluded.

Alarid testified that printed forms used for personnel information might contain both materials that could be made public and also confidential information. Each file may have letters of reference concerning employment or promotion; an application for employment; an applicant's resume; a personnel action notice; a payroll update sheet; letters or memorandum concerning personnel evaluations, infractions and disciplinary action; a referral for employment form; and letters from physicians concerning sick leave, temporary disability, inability to perform certain jobs, and other medical information.

*Failure to Follow Rules*

■ Counsel for Newsome was oblivious to, or chose to ignore, our N.M.R.Civ.App. 9(m)(2) [§ 21–12–9(m)(2), N.M.S.A.1953] which provides that the statement of proceedings shall contain:

[A] concise, chronological summary of such findings as are material to the review with appropriate references to the transcript. If any finding is challenged, it must be so indicated by a parenthetical note referring to the appropriate numbered point in the argument.

Where there is such a failure the reviewing court may assume the findings are correct and conclusive on appeal. *Tafoya v. Tafoya,* 84 N.M. 124, 500 P.2d 409 (1972). We need only determine if the trial court's conclusions and the judgment are correct, based upon the facts found. *Springer Corp. v. American Leasing Co.,* 80 N.M. 609, 610, 459 P.2d 135, 136 (1969); *American General Companies v. Jaramillo,* 88 N.M. 182, 538 P.2d 1204 (Ct.App.1975).

■ Counsel for Newsome did not properly challenge specific findings nor properly refer either to the place where the finding is found in the transcript or to the point in his argument where the finding is challenged. However, there is little dispute as to the facts; and the right to inspect public documents being an important public issue, and being squarely before us for the first time, we will not, therefore, preclude review of the findings. Looking at the totality of the pleadings and the briefs we find that a sufficient challenge to the facts found by the trial court has been raised. We construe the requirement of our rule liberally in this case only, so that the cause on appeal may be determined on the merits. *Montgomery v. Cook,* 76 N.M. 199, 413 P.2d 477 (1966); *DesGeorges v. Grainger,* 76 N.M. 52, 412 P.2d 6 (1966).

*Construction of the Statute*

Section 71–5–1, supra, reads as follows: Every citizen of this state has a right to inspect any public records of this state except:

A. records pertaining to physical or mental examinations and medical treatment of persons confined to any institutions;

B. letters of reference concerning employment, licensing or permits;

C. letters or memorandums which are matters of opinion in personnel files or students' cumulative files; and

D. as otherwise provided by law.

The statute is not entirely clear in Section A as to whether all medical records are exempt from disclosure.

 A statute should be interpreted to mean what the Legislature intended it to mean, and to accomplish the ends sought to be accomplished by it. *Burroughs v. Board of County Comm'ners,* 88 N.M. 303, 540 P.2d 233 (1975). The entire statute is to be read as a whole so that each provision may be considered in its relation to every other part. *Winston v. New Mexico State Police Bd.,* 80 N.M. 310, 454 P.2d 967 (1969). A construction must be given which will not render the statute's application absurd or unreasonable and which will not defeat the object of the Legislature. *State v. Nance,* 77 N.M. 39, 419 P.2d 242 (1966), *cert. denied,* 386 U.S. 1039, 87 S.Ct. 1495, 18 L.Ed.2d 605 (1967). Moreover, enactments of the Legislature are to be interpreted to accord with common sense and reason. *Westland Development Co. v. Saavedra,* 80 N.M. 615, 459 P.2d 141 (1969).

 The intent of the Legislature to exempt doctors' opinions and other medical information in personnel files from disclosure is evident from an analysis of this statute, and the intent comports with common sense and reasoning as well as with good public policy.

### Exemptions Under the Statute

 Most of the information in dispute clearly falls within the exemptions allowed by statute. We hold that the personnel records of the employees which pertain to illness, injury, disability, inability to perform a job task, and sick leave shall be considered confidential under the statute and not subject to release to the public, except, of course, by the consent or waiver of the particular employee.

 Letters of reference are specifically exempt from disclosure under Section B of the statute as are letters or memorandums which are matters of opinion as noted in Section C. The Legislature quite obviously anticipated that there would be critical material and adverse opinions in letters of reference, in documents concerning disciplinary action and promotions and in various other opinion information that might have no foundation in fact but, if released for public view, could be seriously damaging to an employee. We hold that letters of reference, documents concerning infractions and disciplinary action, personnel evaluations, opinions as to whether a person would be re-hired or as to why an applicant was not hired, and other matters of opinion are also exempt from disclosure under the statute.

### Records Not Specifically Exempt

Alarid contends that in addition to those items which fall within the statutory exemptions, there are other matters of a personal or sensitive nature in the files that, for reasons of public policy, should be kept confidential and not be subject to disclosure. This argument is based on balancing the interests that favor disclosure against those interests that favor confidentiality.

Alarid claims that military discharge and arrest records are of a confidential nature but are not specifically exempted by statute. There is no New Mexico case which faces this issue squarely. Only three cases have mentioned this statute. *Ortiz v. Jaramillo,* 82 N.M. 445, 483 P.2d 500 (1971) (deciding that the county clerk's mag-card list of registered voters is a public record and must be made available on reasonable terms to persons demanding the list); *Sanchez v. Board of Regents of Eastern New Mexico University,* 82 N.M. 672, 486 P.2d 608 (1971) (holding that a preliminary list setting forth proposed faculty salaries which had not been submitted to or accepted by the faculty members was not a public record within the meaning of this statute); *State v. Harrison,* 81 N.M. 623, 471 P.2d 193 (Ct.App.1970), *cert. denied,* 81 N.M. 668, 472 P.2d 382 (1970) (assuming but declining to hold that there is an exemption under the statute permitting a criminal defendant to inspect police records during the investigation of a crime).

Although the facts in *Sanchez* are not analogous to those in this case, the majority referred favorably to *MacEwan v. Holm*, 226 Or. 27, 359 P.2d 413 (1961) as a case containing a scholarly review of the entire field of the public's right of inspection of records. The dissenting opinion in *Sanchez* also quoted extensively from *MacEwan*. In the Oregon case the defendant sought to inspect data relating to nuclear radiation sources collected by the State Board of Health. The Oregon Supreme Court held that the data involved were "public records" for purposes of inspection by the public. We quote at some length from *MacEwan* because of the importance of that analysis in arriving at a decision herein.

The court stated:

Writings coming into the hands of public officers in connection with their official functions should generally be accessible to members of the public so that there will be an opportunity to determine whether those who have been entrusted with the affairs of government are honestly, faithfully and competently performing their function as public servants. *Nowack v. Auditor General,* supra. [243 Mich. 200, 219 N.W. 749 (1928)]. "Public business is the public's business. The people have the right to know. Freedom of information [about public records and proceedings] is their just heritage. . . Citizens . . . must have the *legal* right to . . . investigate the conduct of [their] affairs." Cross, The People's Right to Know, p. xiii (1953).

Id. at 38, 359 P.2d at 418.

The public's right of inspection is not without qualification. There may be circumstances under which the information contained in a record can be justifiably withheld from the person seeking it. Obviously, if it is shown that the information is being sought for an unlawful purpose, the request for it may be denied. [Citations omitted.] Even where the request is made for a lawful purpose the public interest may require that the information be withheld. Thus where the information is received in confidence, it

may be proper to refuse access to it. . . . And in *City and County of San Francisco v. Superior Court,* 38 Cal.2d 156, 238 P.2d 581 (1952) confidential information furnished to a municipal corporation by some of its employees for the purpose of establishing rates of compensation was held to be non-accessible. Similarly, in *Mathews v. Pyle,* supra, 75 Ariz. [76] at page 81, 251 P.2d [893] at page 897, it was held that a report of a state Attorney-General to the Governor was subject to inspection unless "confidential and privileged" or if "disclosure would be detrimental to the best interests of the state."

Id. at 44, 359 P.2d at 420–421.

The Oregon court held that the burden is cast upon the agency to decide whether inspection will be permitted and to explain why the record sought should not be furnished and the court ruled:

Ultimately, of course, it is for the courts to decide whether the explanation is reasonable and to weigh the benefits accruing to the agency from non-disclosure against the harm which may result to the public if such records are not made available for inspection.

Id. at 46, 359 P.2d at 422.

The court stated that, since the justification for a refusal to permit inspection will depend upon the circumstances of the particular case, "we can offer no specific guide for that administrative decision."

*MacEwan* has been widely cited and quoted by courts and legal scholars as one of the leading cases in this area of the law. *MacEwan* was decided at a time when Oregon statutes provided that citizens had a right to inspect all public records, although there was no statutory definition of the term "public records." The court in *MacEwan* looked to the common law doctrine that the public had certain limited rights to inspect government documents. *Papadopoulos v. State Board of Higher Education,* 8 Or.App. 445, 494 P.2d 260 (1972).

*Papadopoulos* points out that shortly after *MacEwan* was decided the Oregon legis-

lature passed a law providing that the custodian of any public records, "unless otherwise expressly provided by statute," shall furnish proper and reasonable opportunities for inspection of all records. Also enacted was a statutory definition of "public records."

The Oregon court had under consideration a claim of confidentiality by Oregon State University for a report that had been made to university officials concerning the operation of the School of Science in which plaintiff was a faculty member. A team of four educators from out-of-state universities had been retained to make an investigation and give a confidential report to the university administration.

After a scholarly analysis of the competing theories of law and a detailed look at the facts in that case, the court held that the evidence did not justify keeping the records confidential.

In *Papadopoulos* the court stated that some claims of confidentiality might well be decided on the very nature of the document sought. However, the court held that it was necessary to establish the exact contents of the report in question in order for defendants to prove that it contained personal information about university employees, disclosure of which would damage the "public interest." The court recognized that there could be a case made for non-disclosure if the public record contained "confidential personal information," the disclosure of which would damage the public interest. Attention was also called to procedures suggested by the Supreme Courts of Wisconsin and Arizona for handling the evidence claimed to be confidential.

In *State ex rel. Youmans v. Owens*, 28 Wis.2d 672, 137 N.W.2d 470 (1965), *opinion modified on denial of rehearing*, 28 Wis.2d 672, 139 N.W.2d 241 (1966), the court established the following routine:

> [T]he proper procedure is for the trial judge to examine *in camera* the record or document sought to be inspected. Upon making such *in camera* examination, the trial judge should then make his determination of whether or not the harm likely to result to the public interest by permitting the inspection outweighs the benefit to be gained by granting inspection. [footnote omitted.]
>
> In reaching a determination so based upon a balancing of the interests involved, the trial judge must ever bear in mind that public policy favors the right of inspection of public records and documents, and, it is only in the exceptional case that inspection should be denied. . . . If . . . disclosure of only a portion [of a record] is found to be prejudicial to the public interest, the trial judge has the power to direct such portion to be taped over before granting inspection.

Id. at 682–683, 137 N.W.2d at 475.

In *Mathews v. Pyle*, 75 Ariz. 76, 81, 251 P.2d 893, 896–897 (1952) the Arizona Supreme Court established the following procedure:

> [The trial court should] require the . . . documents . . . in question to be produced in court for the private examination of the trial judge in order that the court may determine whether such . . . documents are confidential and privileged or whether their disclosure would be detrimental to the best interests of the state. In no other way can such questions be determined.
>
> Such . . . documents . . . , after examination by the trial judge, should be ordered placed in an envelope under seal of the court with a proviso that such seal shall not be broken or the envelope opened by any unauthorized person but that the same shall be properly identified and held by the clerk of the court as a confidential record until further order of either the trial court or supreme court.

There are a number of courts that hold that "right to know" statutes show a strong legislative policy to make all public records available to public inspection except where secrecy is specifically mandated by statute or rule: "[F]reedom of information is now, by statute, the rule, and secrecy is the ex-

ception." *Papadopoulos,* supra, 494 P.2d at 265; *MacEwan v. Holm,* supra; Forkosch, Freedom of Information in the United States, 20 DePaul L.Rev. 1 (1971); *See also State ex rel. Journal Co. v. County Court for Racine County,* 43 Wis.2d 297, 168 N.W.2d 836 (1969).

The greater weight of authority, however, supports Alarid's position in this case. These cases, although recognizing that there is a strong public policy favoring public access to government records, have added additional exceptions to those specified by statute. California cases are in predominance on this issue.

In *Bruce v. Gregory*, 65 Cal.2d 666, 56 Cal.Rptr. 265, 423 P.2d 193 (1967), the Supreme Court of California held that the rights created by the California statutes to inspect public records "are, by their very nature, not absolute, but are subject to an implied rule of reason." Id. at 676, 56 Cal.Rptr. at 271, 423 P.2d at 199; *Chronicle Publishing Co. v. Superior Court*, 54 Cal.2d 548, 7 Cal.Rptr. 109, 354 P.2d 637 (1960) (state bar records in disciplinary proceedings); *City and County of San Francisco v. Superior Court*, 38 Cal.2d 156, 238 P.2d 581 (1951) (communication in official confidence); *Runyon v. Board of California*, 26 Cal.App.2d 183, 79 P.2d 101 (1938) (letters and documents in possession of parole board).

In *Craemer v. Superior Court in and for Marin County*, 265 Cal.App.2d 216, 71 Cal. Rptr. 193 (1968), the court called attention to the numerous California cases that had passed on this question, and to the California statute, which provides that every citizen has the right of inspection "except as otherwise expressly provided by statute." That court stated the rule to be:

[W]here there is no contrary statute or countervailing public policy, the right to inspect public records must be freely allowed. In this regard the term "public policy" means anything which tends to undermine that sense of security for individual rights, whether of personal liberty or private property, which any citizen ought to feel has a tendency to be injurious to the public or the public good.

Id. at 222, 71 Cal.Rptr. at 199.

New Mexico's "right to know" act, § 71–5–1, et seq. does not define "public record." It makes only the few exceptions discussed herein. There are numerous other exceptions created by statute that are not material hereto.

█ It is contended by Newsome that § 71–6–2(C), N.M.S.A. 1953 (Supp.1975) defining "public records" should apply in this case. That statute is part of the Public Records Act passed in 1959, § 71–6–1, N.M. S.A. 1953 et seq., ch. 245, 1959 N.M. Laws 694, to establish a system for preserving records. Section 71–5–1, supra, our "right to know" law was passed in 1947, ch. 130, 1947 N.M. Laws 239, and was amended in 1973, ch. 271 § 1, 1973 N.M. Laws 1222. The two laws have no relationship to each other for purposes of decision in this cause.

The definition of public records in § 71–6–2(C), supra, is so broad as to materials subject to preservation by the records division that it covers the trash in the waste basket. No reasonable interpretation of § 71–5–1, supra, could possibly include all of the records that would be subject to inspection by the public under that definition. *Sanchez v. Board of Regents,* supra, alluded to this statute but did not specifically rule that it applied in that case.

█ It would be helpful to the courts for the Legislature to delineate what records are subject to public inspection and those that should be kept confidential in the public interest. Until the Legislature gives us direction in this regard, the courts will have to apply the "rule of reason" to each claim for public inspection as they arise.

█ We hold that a citizen has a fundamental right to have access to public records. The citizen's right to know is the rule and secrecy is the exception. Where there is no contrary statute or countervailing public policy, the right to inspect public records must be freely allowed.

█ There may be circumstances under which the information contained in the rec-

ord can be justifiably withheld. The custodian has the initial duty to make this determination as to each record requested. He must first determine that the person requesting access is a citizen, § 71–5–1, supra, and that he is requesting the information for a lawful purpose. § 71–5–2, N.M.S.A. 1953. The burden is upon the custodian to justify why the records sought to be examined should not be furnished. It shall then be the court's duty to determine whether the explanation of the custodian is reasonable and to weigh the benefits to be derived from non-disclosure against the harm which may result if the records are not made available.

■ We subscribe to the procedures as set forth in *State ex rel. Youmans v. Owens,* supra, and *Mathews v. Pyle,* supra, as regards the handling of alleged confidential records when they reach the courts.

■ Applying these general principles to the case at hand, we decline to hold as Alarid would have us, that all information in the records regarding military discharges or arrest records should be exempted from disclosure. Blanket guidelines obviously are not practical. However, in any individual case where an employee has been solicited to give information, which information is vital to the University's employment procedure, and it is furnished after a promise to keep the information confidential, and where the release of that information would not be in the public interest, then it should be immune to disclosure. If, for instance, an employee was in military service during the Viet Nam conflict and received something less than an honorable discharge and this information was obtained under a promise of confidentiality, it would be in the public interest that this information be not released under the legal theories as above set forth. The same reasoning would apply as to arrest records.

■ The promise of confidentiality standing alone would not suffice to preclude disclosure. The promise would have to coincide with reasonable justification, based on public policy, for refusing to re-

lease the records, as was true in this case. Furthermore, the justification would have to be articulated by the custodian for the record.

■ Alarid complains that the request for inspection poses an extreme burden on his office. This is not a legitimate reason, by itself, for failure to make records available for inspection or for copying. The custodian may make reasonable restrictions and conditions on access to the records. Reasonable regulations may be made as to times when and places where they may be inspected or copied. The custodian may insist upon reasonable supervision for the safekeeping of the records. *Ortiz v. Jaramillo,* supra, and authorities cited therein, § 71–5–2, supra.

*Granting of "Appropriate" Relief*

The trial court's conclusions indicated that the alternative writ of mandamus was quashed because Newsome sought more relief than that to which he was entitled. He sought disclosure of "all personnel records" whereas he was entitled only to those which were not confidential. The effect of this ruling was to say "If you plead for too much relief, you get none at all."

Under N.M.R.Civ.P. 54(c) [§ 21–1–1(54)(c), N.M.S.A. 1953] the court below should have granted Newsome the relief to which he was entitled, by issuing a writ in conformity with the exemptions provided herein. The rule states in relevant part:

Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.

*State ex rel. Gary v. Fireman's Fund Indemnity Co.,* 67 N.M. 360, 355 P.2d 291 (1960), dealt with this rule and modified a line of inconsistent prior cases which had limited parties to recovering only what had been prayed for in their pleadings.

■ New Mexico now clearly allows any appropriate relief to be granted in a case regardless of what is specifically re-

quested in the pleadings. Thus, *Fireman's Fund*, supra, allowed quantum meruit recovery, where the claim was based solely on express contract and *Honaker v. Ralph Pool's Albuquerque Auto Sales, Inc.*, 74 N.M. 458, 394 P.2d 978 (1964) allowed recovery of damages for breach of contract although the pleadings had prayed only for recission. Thus the filing of a complaint seeking relief of one sort is not an irrevocable election of remedies precluding the granting of relief of another kind. Id. at 464–465, 394 P.2d at 982.

 Newsome was entitled to a ruling that he be granted the right to inspect those portions of the personnel records that are not specifically exempted by statute and are not considered to be confidential as defined herein. Failure to grant this relief was error.

This cause is remanded to the trial court for proceedings not inconsistent herewith.

IT IS SO ORDERED.

SOSA and PAYNE, JJ., concur.