**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-057**

**Filing Date:    May 7, 2009**

**Docket No. 27,858**

**CITY OF FARMINGTON,**

       **Respondent-Appellant/Cross-Appellee,**

**v.**

**THE DAILY TIMES and NEW MEXICO**
**FOUNDATION FOR OPEN GOVERNMENT,**

       **Petitioners-Appellees/Cross-Appellants.**

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Karen L. Townsend, District Judge**

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Lisa Mann
Erin E. Langenwalter
Albuquerque, NM

City of Farmington
Jay Burnham, City Attorney
William Cooke, Deputy City Attorney
Farmington, NM

for Appellant

Dines & Gross, P.C.
Jim Dines
Gregory P. Williams
Albuquerque, NM

for Appellees

New Mexico Municipal League, Inc.
Randall D. Van Vleck, General Counsel
Santa Fe, NM

1

for Amicus Curiae

## OPINION

**WECHSLER, Judge.**

**{1}**     Petitioners *The Daily Times* and the New Mexico Foundation for Open Government (NMFOG) made requests of the City of Farmington (City) to inspect applications for the position of city manager pursuant to the Inspection of Public Records Act (IPRA), NMSA 1978, §§ 14-2-1 to -12 (1947, as amended through 2005). The City denied the requests. The issue presented on appeal requires this Court to determine whether the City met its burden under *State ex rel. Newsome v. Alarid*, 90 N.M. 790, 568 P.2d 1236 (1977), of establishing that a countervailing public policy outweighed the public's interest in disclosure. We hold that the City did not meet its burden. We further hold that the *Newsome* analysis applies in this case because the requested documents do not fit within an exception stated in IPRA. We affirm the district court's decision requiring disclosure.

## BACKGROUND

**{2}**     A nationwide search for the position of city manager was launched by the mayor of Farmington, with the approval of the city council, in January 2007, following the city manager announcing his intent to retire. Although the mayor had the ability to appoint a replacement for the position of city manager without soliciting applications, the City contends that the mayor decided to post the vacancy locally, regionally, and nationally, in order to generate a larger pool of qualified applicants. In addition to soliciting applications, the mayor created a citizens' panel of prominent individuals to represent the community and have input in the selection process and requested that the city department heads participate in the process. Ninety-one individuals applied for the position of city manager by the closing date of March 5, 2007.

**{3}**     On March 1, 2007, *The Daily Times* made a formal request pursuant to IPRA for a list that identified all the applicants for the city manager position and for copies of all the applications received by the City. The City denied *The Daily Times*' request, asserting that the applicants' privacy outweighed the open government policy stated in IPRA, and, therefore, only "the identities of those selected as finalists and invited for on-site interviews would be released at the time the finalist list is determined." Following the City's denial of *The Daily Times*' IPRA request, NMFOG also submitted a formal request to the City pursuant to IPRA, requesting the same information. The City denied NMFOG's request on the same grounds.

**{4}**     Petitioners filed a petition for writ of mandamus, requesting that the district court direct the City to produce the requested information. A two-day evidentiary hearing was held on the merits of the request, and the City presented testimony to support its argument that public policy considerations supported non-disclosure. Specifically, the City presented

2

testimony that it made the decision to keep the names confidential because (1) it hoped to obtain a larger and more qualified applicant pool; (2) other application processes for city managers in a variety of other cities and states were closed processes; and (3) by not stating the application process was open, the City had implicitly guaranteed a confidential selection process until the finalists were selected. The City also presented testimony showing that requiring the City to disclose the names of the applicants and the contents of their applications would have a chilling effect on individuals willing to apply for public positions. At the conclusion of the evidence, the district court found that the City failed to meet its burden of establishing that disclosure would be prejudicial to the public interest. The district court therefore concluded that the requested documents were public and issued a peremptory writ of mandamus requiring their disclosure.

**ARGUMENTS ON APPEAL**

**{5}** On appeal, the City argues that the district court erred in its application of the "rule of reason" by imposing an additional burden of proving "why disclosure would be prejudicial to the public interest"; that the district court should have shifted the burden to the parties requesting disclosure to show how the public would be harmed if the records were withheld; and that the district court's failure to conclude that the City had established a countervailing public policy in favor of non-disclosure based on the evidence presented amounted to an irrebuttable presumption in favor of disclosure. In their cross appeal, Petitioners argue that the district court erred by applying the "rule of reason," contending that IPRA, on its face, resolves the issue presented by this case. We address these arguments in turn.

**IPRA AND THE "RULE OF REASON"**

**{6}** We review statutory construction de novo. *See Bd. of Comm'rs of Doña Ana County v. Las Cruces Sun-News (Doña Ana)*, 2003-NMCA-102, ¶ 19, 134 N.M. 283, 76 P.3d 36. In interpreting statutes, we seek to ascertain legislative intent by first looking to the statute's plain language. *Id.* When the "statute's language is clear and unambiguous, we give the statute its plain and ordinary meaning and refrain from further interpretation." *Id.*

**{7}** IPRA embodies New Mexico's policy of open government and provides that "[e]very person has a right to inspect public records of this state." *See* § 14-2-1(A). Under the provisions of IPRA, public records are broadly defined to include:

> all documents, papers, letters, books, maps, tapes, photographs, recordings and other materials, regardless of physical form or characteristics, that are used, created, received, maintained or held by or on behalf of any public body and relate to public business, whether or not the records are required by law to be created or maintained.

Section 14-2-6(E). IPRA provides a broad right to inspect public records, subject to twelve

3

identified exceptions. Section 14-2-1(A). Some of the long-standing exceptions, and those particularly relevant to this Court's discussion herein, include:

> (1) records pertaining to physical or mental examinations and medical treatment of persons confined to an institution;

> (2) letters of reference concerning employment, licensing or permits;

> (3) letters or memorandums that are matters of opinion in personnel files or students' cumulative files;

> . . . .

> (7) public records containing the identity of or identifying information relating to an applicant or nominee for the position of president of a public institution of higher education;

> . . . .

> (12) as otherwise provided by law.

Section 14-2-1(A). These limited exceptions to the public's right to inspect public records, in conjunction with a broad definition of public records, further IPRA's purpose of ensuring that "all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of public officers and employees." Section 14-2-5.

**{8}** Independent of the statutory exceptions contained in Section 14-2-1(A), our Supreme Court has recognized a non-statutory exception to disclosure. *See Newsome*, 90 N.M. at 798-99, 568 P.2d at 1244-45; *see also Spadaro v. Univ. of N.M. Bd. of Regents*, 107 N.M. 402, 404, 759 P.2d 189, 191 (1988) (stating that "[t]he Supreme Court in *Newsome* . . . carved out a non-statutory 'confidentiality exception' to disclosure under [IPRA]"). This non-statutory exception, also referred to as the "rule of reason," requires the district court to balance "the fundamental right of all citizens to have reasonable access to public records against countervailing public policy considerations which favor confidentiality and nondisclosure." *See Spadaro*, 107 N.M. at 404, 759 P.2d at 191. This balancing test is intended to supplement IPRA by providing a mechanism for addressing claims of confidentiality that have not yet been specifically addressed by our Legislature. *See Newsome*, 90 N.M. at 797, 568 P.2d at 1243 (noting that we apply the "rule of reason" in the absence of legislative direction). Thus, "[t]he rule of reason analysis is applicable only to claims of confidentiality asserted for public records that do not fall into one of the statutory exceptions to disclosure contained in Section 14-2-1." *Spadaro*, 107 N.M. at 404-05, 759 P.2d at 191-92; *see also State ex rel. Barber v. McCotter*, 106 N.M. 1, 2, 738 P.2d 119, 120 (1987) ("Such balancing only applies . . . to information not covered by statute.").

4

**{9}**     In applying the "rule of reason," however, it is still the responsibility of our courts to give effect to the "strong public policy favoring access to public records." *See City of Las Cruces v. Pub. Employee Labor Relations Bd.*, 121 N.M. 688, 691, 917 P.2d 451, 454 (1996). As our Supreme Court acknowledged in *Newsome*, a "citizen's right to know is the rule and secrecy is the exception." *Newsome*, 90 N.M. at 797, 568 P.2d at 1243. Thus, "when there is no contrary statute or countervailing public policy, the right to inspect public records must be freely allowed." *Derringer v. State*, 2003-NMCA-073, ¶ 9, 133 N.M. 721, 68 P.3d 961.

**{10}**     To determine whether disclosure is required, we begin "[e]ach inquiry . . . with the presumption that public policy favors the right of inspection." *See Doña Ana*, 2003-NMCA-102, ¶ 11. A public entity seeking to overcome this presumption bears the burden of demonstrating that a countervailing public policy exists. *Id.* In *Doña Ana*, this Court succinctly summarized the public entity's burden as requiring proof of "why . . . disclosure would be prejudicial to the public interest," or, in other words, what benefit is derived from non-disclosure. *See id.* Once the public entity has overcome the presumption in favor of disclosure, the court must assess the competing public interests by "determin[ing] whether the explanation of the custodian is reasonable" and "weigh[ing] the benefits to be derived from non-disclosure against the harm which may result if the records are not made available." *Id.* (internal quotation marks and citation omitted).

## REQUIREMENT OF DISCLOSURE

**{11}**     The City makes multiple arguments regarding the proper construction and application of the "rule of reason." The City asserts that the "rule of reason" provides a balancing test to be followed when invoking the twelfth exception to IPRA, Section 14-2-1(A)(12) ("as otherwise provided by law"). However, the "rule of reason," as noted above, is a non-statutory exception to disclosure. *See Newsome*, 90 N.M. at 794, 798, 568 P.2d at 1240, 1244. The twelfth exception has generally been interpreted as referring to exceptions contained in other statutes and properly promulgated regulations. *See, e.g., City of Las Cruces*, 121 N.M. at 690-91, 917 P.2d at 453-54. Thus, we do not address the City's argument that the applications were exempt from disclosure pursuant to Section 14-2-1(A)(12) because the City has not identified any statute or regulation that prohibits disclosure of the information requested.

**{12}**     The City additionally argues that *Newsome* established a burden-shifting test under which the City only bore an "initial burden" of establishing a countervailing public policy and that, therefore, the district court improperly placed the burden on the City to show that prejudice would result from disclosure. To the extent the City contends that the district court placed an additional burden on the City by requiring it to demonstrate the harm that would result from disclosure, we see no difference between this burden and the burden articulated in *Newsome* requiring the City to demonstrate the benefits of non-disclosure. *See Newsome*, 90 N.M. at 798, 568 P.2d at 1244. To the extent the City contends that a "shifting burden is a logical and necessary interpretation of the *Newsome* test" and asks this Court to conclude

5

that a burden should be placed on the party requesting the documents to demonstrate the harm to the public from non-disclosure, we disagree and decline to place part of the burden on the requesting party.

**{13}** Nowhere in *Newsome* does our Supreme Court place a burden on the party requesting documents. Instead, *Newsome* clearly places "[t]he burden . . . upon the custodian to justify why the records sought to be examined should not be furnished." *Id.* Further, it would be contrary to this state's public policy in favor of disclosure to place a burden on the requesting party that may be difficult or perhaps impossible to meet because the custodian of the records has refused to make the information contained in the records known to the requesting party. We believe our Supreme Court intended to avoid the difficulties associated with placing part of the burden on the requesting party by creating a procedure in *Newsome* that allowed the courts to view, in camera, the information in the possession of the custodian and make a determination regarding the competing public policies based on that information. *See Doña Ana*, 2003-NMCA-102, ¶ 11 (noting that, "to determine whether the explanation of the custodian is reasonable and to weigh the benefits to be derived from non-disclosure against the harm which may result if the records are not made available[,] the trial judge must review the materials—preferably in camera" (internal quotation marks and citation omitted)).

**{14}** We therefore read *Newsome* as placing the burden on the custodian of the records to demonstrate a reason for non-disclosure and a duty on the courts to assess the potential harm from non-disclosure through the process of in camera review. *See Newsome*, 90 N.M. at 798, 568 P.2d at 1244 ("The burden is upon the custodian to justify why the records sought to be examined should not be furnished. It shall then be the court's duty to determine whether the explanation of the custodian is reasonable and to weigh the benefits to be derived from non-disclosure against the harm which may result if the records are not made available."). Our courts can competently satisfy this duty by weighing the explanation furnished by the custodian against the harm customarily associated with secrecy in government—the impairment of the public's ability to assess the actions of public officials and to hold such public officials accountable. The requesting party has no burden to make an evidentiary showing regarding the harm that would result from non-disclosure.

**{15}** The City also contends that, by not accepting the evidence presented as sufficient to justify non-disclosure, the district court created an irrebuttable presumption in favor of disclosure and that, if the evidence the City presented was insufficient, no public entity will know the degree of evidence required. The City's argument, however, is premised on a misunderstanding of how the "rule of reason" operates. As this Court held in *State ex rel. Blanchard v. City Commissioners of Clovis*, 106 N.M. 769, 772, 750 P.2d 469, 472 (Ct. App. 1988), *Newsome* establishes threshold requirements that must be met before the district court ever engages in the balancing portion of the test. These threshold requirements include the custodian's justification as to "why the records should not be furnished." *State ex rel. Blanchard*, 106 N.M. at 772-73, 750 P.2d at 472-73. Once this threshold showing has been made, the district court then engages in balancing the competing public policy interests. *See*

6

*id.*

**{16}** In this case, the City attempted to put on evidence that disclosure of the applications would deter potential applicants and reduce the quality and scope of the applicant pool. While there is disagreement as to whether the City's proof of its justification was speculative, even if the City had proven that it would receive fewer applications if the hiring process were open, it would still be left to the district court to determine whether the City's justification was sufficient to outweigh the public's interest in disclosure. Therefore, pursuant to the "rule of reason," the amount of evidence offered to support the custodian's justification is of little significance if the policy itself is insufficient to outweigh the public's interest in disclosure.

**{17}** Even if the City presented sufficient evidence of its justification that its ability to solicit as many well-qualified applicants would be hindered if the hiring process were open, to hold that non-disclosure is appropriate, the City's concern must be of greater public importance than the public's interests in ensuring that the City's selection process was legitimate and that the people the public had put in charge to make these decisions had, in fact, exercised their discretion in such a way that the most qualified applicant was indeed selected. The testimony presented by the City indicates that, absent disclosure, the public would be required to rely on the citizens' panel, including several public officials, to have acted appropriately in representing the community in the City's selection of the finalists for the position of city manager. In this Court's opinion, New Mexico's policy of open government is intended to protect the public from having to rely solely on the representations of public officials that they have acted appropriately. *See* § 14-2-5; *see also City of Las Cruces*, 121 N.M. at 691, 917 P.2d at 454 (stating that "a citizen has a fundamental right to have access to public records" (internal quotation marks and citation omitted)). As a result, when, as here, the application is for a high-ranking public position, the public's interest in disclosure outweighs the City's concern that fewer people will apply, and, thus, disclosure is required.

**{18}** A number of other courts that have weighed similar competing policy interests have also concluded that disclosure was required. *See, e.g., Chambers v. Birmingham News Co.*, 552 So. 2d 854 (Ala. 1989); *City of Kenai v. Kenai Peninsula Newspapers, Inc.*, 642 P.2d 1316 (Alaska 1982). In *City of Kenai*, two municipalities argued that they had "an interest in attracting the largest and most qualified applicant pool" and that this interest could be best accomplished "by not disclosing the names and resumes of applicants." 642 P.2d at 1323 (internal quotation marks omitted). The Alaska Supreme Court held that disclosure was required, stating:

> Public officials such as City Managers, and Chiefs of Police have substantial discretionary authority. The qualifications of the occupants of such offices are of legitimate public concern. Disclosing the names and applications of applicants allows interested members of the public, such as the newspapers here, to verify the accuracy of the representations made by

7

the applicants, and to seek additional information which may be relevant to the selection process.

The applicants' claim that revealing the names and applications of office seekers will narrow the field of applicants and ultimately prejudice the interests of good government is not sufficiently compelling to overcome the public's interest in disclosure. . . . It is not intuitively obvious that most well qualified potential applicants for positions of authority in municipal governments will be deterred from applying by a public selection process, and we have been referred to no studies tending to prove that point.

The applicants' individual privacy interests in having their names and applications not revealed are also not of an order sufficient to overcome the public's interest. The applicants are seeking high government positions. Public officials must recognize their official capacities often expose their private lives to public scrutiny. . . .

It may be that in some cases an individual will not wish his current employer to know that he has applied for another job. That desire is one which cannot be accommodated where the job sought is a high public office.

*See id.* at 1324 (internal quotation marks and citation omitted).

**{19}** We consider this analysis persuasive, particularly because *City of Kenai* addresses many of the arguments advanced by the City. Therefore, we conclude that an implicit guarantee of confidentiality, as the City argues it made to its applicants in this case, is insufficient to overcome the public's interest in information regarding applicants for a high-profile public position. Moreover, in *City of Kenai*, the court rejected the applicants' argument that disclosure would "narrow the field of applicants and ultimately prejudice the interests of good government." *Id.* In this case, the City made a similar argument in favor of non-disclosure; however, based on the speculative nature of the City's argument—that people might not apply—this justification is also insufficient to overcome the public's interest in disclosure. *See Doña Ana*, 2003-NMCA-102, ¶ 33 (rejecting policy reason asserted by custodian of records when speculative).

**APPLICABILITY OF *NEWSOME***

**{20}** As an additional argument in support of disclosure, Petitioners contend on cross appeal that the district court erred by applying *Newsome* in this case, arguing that our Legislature has implicitly determined that all employment applications, other than those for university presidents, must be disclosed. Specifically, Petitioners rely on the Legislature's amendment to IPRA excluding "public records containing the identity of or identifying information relating to an applicant or nominee for the position of president of a public institution of higher education," Section 14-2-1(A)(7), to advocate that no balancing test is

8

necessary in this case because, by not including other types of applications as part of the exception, the Legislature intended disclosure of all other applications. While we agree that the Legislature did not include other employment applications within this exception to disclosure, we do not believe that the Legislature implicitly meant that there should be unfettered disclosure of all other types of employment applications. Contrary to Petitioners' argument, we believe the "rule of reason" still applies.

**{21}** Petitioners cite to cases stating that the *Newsome* balancing test "only applies . . . to information not covered by statute" to argue that employment applications are addressed by the statute and, thus, the "rule of reason" does not apply. *See Barber*, 106 N.M. at 2, 738 P.2d at 120; *Spadaro*, 107 N.M. at 404-05, 759 P.2d at 191-92. As we read these cases, however, only when the documents fit within an exception to IPRA do our courts refrain from applying *Newsome*. *See Barber*, 106 N.M. at 2, 738 P.2d at 120; *Spadaro*, 107 N.M. at 404-05, 759 P.2d at 191-92. These cases do not support abandoning the "rule of reason" simply because IPRA includes a related exception that does not apply to the requested information. In fact, if this interpretation had been intended by *Newsome*, there would have been no need to establish the "rule of reason." *See Newsome*, 90 N.M. at 797-98, 568 P.2d at 1243-44 (establishing the "rule of reason" to determine whether documents contained in personnel records that were not explicitly exempted from the statute should be disclosed despite the fact that the statute included exceptions relating to various other types of personnel records). We therefore disagree with Petitioners' contention that the district court erred in applying *Newsome*. Because we rule in favor of Petitioners, we do not address their argument that the district court erred in allowing Donna Brooks to testify as an expert witness.

**CONCLUSION**

**{22}** The district court did not err in requiring disclosure of the requested documents. Accordingly, we affirm.

**{23}** **IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**MICHAEL E. VIGIL, Judge**

**Topic Index for *City of Farmington v. The Daily Times*, No. 27,858**

**GV**                  **GOVERNMENT**
GV-PR            Public Records

**ST**                  **STATUTES**
ST-LI             Legislative Intent