This decision was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of non-precedential dispositions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**ERIN NOLL, as the Personal**
**Representative of the WRONGFUL**
**DEATH ESTATE OF ETHAN**
**NOLL, Deceased,**

  Plaintiff-Appellee,

**v.**                                                    No. A-1-CA-35981

**NEW MEXICO DEPARTMENT OF**
**PUBLIC SAFETY and TOWN OF**
**EDGEWOOD,**

  Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Francis J. Mathew, District Judge**

Davis Kelin Law Firm, LLC
Zackeree S. Kelin
Albuquerque, NM

Ellis & Estes
Daniel P. Estes
Corrales, NM

for Appellee

The Baker Law Group

Jeffrey L. Baker

Renni Zifferblatt

Albuquerque, NM

for Appellant Town of Edgewood


Hatcher Law Group, P.A.

Keitha A. Leonard

Scott P. Hatcher

Santa Fe, NM


Walz and Associates, P.C.

Jerry A. Walz

Albuquerque, NM

for Appellant NM Department of Public Safety

NM District Attorneys' Association

Robert "Rick" Tedrow

Santa Fe, NM

Gail MacQuesten

Santa Fe, NM

for Amicus Curiae NM District Attorneys' Association

**MEMORANDUM OPINION**

**VARGAS, Judge.**

{1}     Defendants New Mexico Department of Public Safety (DPS) and the Town of Edgewood (the Town) appeal the district court's decision awarding attorney fees and costs to Plaintiff Erin Noll. Defendants contend the district court erred in concluding they violated the Inspection of Public Records Act (IPRA), NMSA

1978, Sections 14-2-1 to -12 (1979, as amended through 2018), by effectively denying her IPRA request. Because Defendants failed to satisfy their burden to prove that their actions were in compliance with IPRA, we affirm.

**BACKGROUND**

**A.     IPRA Request to the Town**

{2}     On April 4, 2015, Plaintiff's husband was killed in an officer-involved shooting. Plaintiff first submitted a request to inspect public records, pursuant to IPRA, to the Town[1] on April 9, 2015, seeking all documents, video recordings, audio recordings, and CAD reports arising from the shooting death of her husband. The Town responded to Plaintiff's request in a letter dated April 14, 2015, stating that it could not permit inspection of the requested records because they were "part of the ongoing investigation into the events surrounding Mr. Noll's death[,]" citing Section 14-2-1(A)(4), and assuring Plaintiff that "[o]nce the investigation is concluded," the records would be available for review. Then, on April 23, 2015, the Town received a letter from District Attorney Angela Pacheco, stating her office's policy of presenting officer-involved shootings to a grand jury for review and "requesting that [the Town] not release the information requested until the criminal matter has been finalized by a Santa Fe County grand jury." The Town

---

[1] Plaintiff also submitted a request to the Santa Fe County Sheriff's Department, but the dispute between the Sheriff's office and Plaintiff has since been resolved and is not the subject of this appeal.

3

then sent a letter dated April 27, 2015, to Plaintiff reiterating its previous position that it believed the records were exempt from disclosure under the law enforcement exception, this time citing Pacheco's letter, and repeating that it would not be producing any records related to the incident.

{3}     Four days after she sent her request to the Town, Plaintiff sent a separate IPRA request to DPS requesting the same types of records she sought from the Town. Pacheco followed with a letter to DPS dated April 23, 2015, identical to the one she sent the Town, setting out her office's policy. Unlike the Town, however, DPS did not initially respond to Plaintiff's request with a denial based on the law enforcement exception, but instead informed Plaintiff that her request was "over burdensome" in nature and explained that "additional preparation time [wa]s required for receiving all proper documentation." DPS concluded its investigation by July 9, 2015, and turned its case file over to the district attorney at that time. Then, on December 8, 2015, DPS sent a letter to Plaintiff, stating it "ha[d] not received the [district attorney]'s approval to release the requested information" and therefore could not produce the records because it was "made up of confidential law enforcement records exempt from disclosure under [Section] 14-2-1(A)(4)." In that letter, DPS stated, "[w]e wish to make it clear that, to date, we have not denied your request. Pursuant to [Section] 14-2-1(A)(4), we simply cannot comply with your request at the present time."

4

**{4}** Both the Town and DPS (collectively, Defendants) monitored Plaintiff's IPRA request, periodically informing her that her request would be delayed until the conclusion of the district attorney's investigation. In January 2016, District Attorney Jennifer Padgett took office and promptly did away with the procedure of presenting officer-involved shootings to the grand jury. Then, on May 5, 2016, Padgett informed Defendants that the district attorney's office did not intend to file any criminal charges related to the April 4, 2015, shooting and authorized Defendants "to allow inspection and production of any public records for the matter, in accordance with [IPRA]." Upon receipt of the district attorney's letter, Defendants immediately released the records responsive to Plaintiff's IPRA request.

**{5}** Six months prior to Defendants' disclosure, however, on November 4, 2015, Plaintiff brought an IPRA enforcement action. Defendants each filed motions for summary judgment, and Plaintiff responded to those motions by requesting either a privilege log describing the withheld records or in camera review by the district court. The district court denied the motions for summary judgment, and the case went to trial. At trial, the Town stipulated that it "did not review each of the records and recordings in its possession to independently determine if any of the material was . . . 'confidential' as the term is used in [IPRA]." DPS's records custodian also testified that no one in the DPS records office conducted a

5

document-by-document review of the requested records.

{6} Following trial, the district court issued findings of fact and conclusions of law. Noting that under the language of the law enforcement exception, "[t]he critical factor is the nature of the document itself[,]" the district court found that DPS and the Town did not "attempt to review the requested documents to determine if any of the requested documents did not contain confidential information." The district court concluded that the delay in providing records in response to Plaintiff's IPRA request was "an effective denial of the request[,]" and stated, "[t]he decision by . . . Defendants to deny the IPRA requests of . . . Plaintiff without seeking in camera review of the information requested to determine if it came within the law enforcement exception violated IPRA." The district court awarded Plaintiff costs and attorney fees under Rule 1-054 NMRA, and Defendants timely appealed.

**DISCUSSION**

{7} Defendants argue that the district court's order is tantamount to a requirement that they file suit and seek in camera review before invoking the law enforcement exception. They argue that no such action is required by law, that their responses to Plaintiff's request do not amount to a denial under IPRA, and that Plaintiff is therefore not entitled to attorney fees and costs.

**Standard of Review and Statutory Construction**

6

**{8}** Our review of the district court's IPRA determination is de novo, as it requires interpretation of the statute. *Faber v. King*, 2015-NMSC-015, ¶ 8, 348 P.3d 173 (stating that New Mexico appellate courts "construe IPRA in light of its purpose and interpret it to mean what the Legislature intended it to mean, and to accomplish the ends sought to be accomplished by it" (internal quotation marks and citation omitted)). In determining the Legislature's intent, our appellate courts "are aided by classic canons of statutory construction, and we look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Faber*, 2015-NMSC-015, ¶ 9 (alteration, internal quotation marks, and citation omitted). Courts also "consider the history and background of the statute" and "examine the overall structure of the statute and its function in the comprehensive legislative scheme." *Id.* (internal quotation marks and citation omitted).

**IPRA**

**{9}** According to its express terms, IPRA was promulgated to ensure that "all persons are entitled to the greatest possible information regarding the affairs of government" because providing such information "is an essential function of a representative government and an integral part of the routine duties of public officers and employees." Section 14-2-5. In furtherance of this policy, IPRA provides "[e]very person" with the "right to inspect public records of this state."

7

Section 14-2-1(A). Nonetheless, our Supreme Court has concluded that "[a]lthough the public's right to access information concerning the inner workings of its government is considerable, it is not without limit." *Republican Party of N.M. v. N.M. Taxation & Revenue Dep't*, 2012-NMSC-026, ¶ 2, 283 P.3d 853. The Legislature has, therefore, enumerated certain types of records that are specifically exempt from inspection, including "law enforcement records that reveal confidential sources, methods, information or individuals accused but not charged with a crime." Section 14-2-1(A)(4).

{10}   "Any person wishing to inspect public records may submit an oral or written request to the custodian." Section 14-2-8(A). "A custodian receiving a written request shall permit the inspection immediately or as soon as is practicable under the circumstances, but not later than fifteen business days after receiving a written request. If the inspection is not permitted within three business days, the custodian shall explain in writing when the records will be available for inspection or when the public body will respond to the request." Section 14-2-8(D). Further, '[i]f a custodian determines that a written request is excessively burdensome or broad," the custodian is allowed "an additional reasonable period of time . . . to comply with the request," but must "provide written notification to the requester within fifteen days of receipt of the request" of the need for additional time. Section 14-2-10. In the event the requested public records contain "information that is [both]

exempt and nonexempt from disclosure[,]" the public records "shall be separated by the custodian prior to inspection and the nonexempt information shall be made available for inspection." Section 14-2-9(A).

{11}    "The only basis IPRA provides for a public body to deny a person the right to inspect a public record is the body's reasonable, good-faith belief that the record falls within one of IPRA's enumerated exceptions." *Britton v. Off. of Att'y Gen.*, 2019-NMCA-002, ¶ 31, 433 P.3d 320; *see id. ¶* 30 ("In cases where a public body believes requested records are exempt from inspection based on one of IPRA's exceptions, the greatest possible information may initially—and in some cases, only—consist of a written explanation of denial issued by the custodian." (internal quotation marks and citation omitted)). In such instances, the custodian is required to "provide the requester with a written explanation of the denial[.]" Section 14-2-11(B). A public body that fails to provide the records for inspection within fifteen days or fails to provide them for inspection within a reasonable time after having designated the records as "excessively burdensome or broad," constructively denies a public records request under IPRA, and the requester may pursue the remedies available under IPRA. *See* § 14-2-11(A); § 14-2-10. To promote compliance and further the statute's purpose, IPRA allows courts to award damages, costs, and reasonable attorney fees "to any person whose written request has been denied and is successful in a court action to enforce the provisions of

9

[IPRA.]" Section 14-2-12(D); *see Faber*, 2015-NMSC-015, ¶ 28 (acknowledging purpose of damage provision is "to promote compliance and accountability from New Mexico's public servants").

**Excessively Burdensome or Broad Requests**

{12}    In light of DPS's characterization of Plaintiff's request as excessively burdensome, we consider whether its delay in producing the requested public records for inspection was reasonable under the circumstances.

{13}    The facts developed at trial establish that in response to Plaintiff's request, DPS released the "primary" report of the incident, along with a three-day acknowledgement letter, because the report did not contain any "confidential information." At the time of Plaintiff's request to DPS in April 2015, DPS did not have any other relevant records because the matter was still being investigated, and the records in DPS's possession had not yet been transcribed. By July 9, 2015, however, all of the records had been compiled and transcribed. The DPS custodian testified that once DPS had compiled the entire file, it would have taken just over a day to turn over the records. She conceded that the delay was caused not by any "burden that was imposed on the agency[,]" but rather by the district attorney's request that DPS withhold the information. DPS released nothing more in response to Plaintiff's IPRA request until May 5, 2016, despite having gathered the relevant records by July 9, 2015.

10

{14} The testimony at trial supports a conclusion that the delay between the April 2015 request and July 9, 2015, when the records were compiled and transcribed, may have been reasonable. *See Britton*, 2019-NMCA-002, ¶ 32 (acknowledging that IPRA's grant of additional time to comply with excessively burdensome or broad requests indicates that the Legislature intended to prioritize adequate and full responses to requests over time considerations under certain circumstances). However, once the information was gathered and transcribed, there was no impediment to redacting and releasing all nonexempt information in a timely manner, aside from the district attorney's request that the information be withheld based on the law enforcement exception. *See* § 14-2-10 (characterizing excessively burdensome or broad requests and those that require additional time to respond). We now consider whether the public records were properly withheld by the Town and DPS in accordance with the law enforcement exception to IPRA until both public bodies were authorized by the district attorney's office to release the records in May 2016.

**Law Enforcement Exception**

{15} The law enforcement exception exempts certain law enforcement records from inspection under IPRA. The plain language of the statute broadly defines a law enforcement record as "evidence in any form received or compiled in connection with a criminal investigation or prosecution by a law enforcement or

11

prosecuting agency, including inactive matters or closed investigations to the extent that they contain the information listed in this paragraph." Section 14-2-1(A)(4). The law enforcement exception, however, limits law enforcement records exempt from public inspection to those "law enforcement records that reveal confidential sources, methods, information or individuals accused but not charged with a crime." Section 14-2-1(A)(4).

{16}     In an IPRA enforcement action, the burden is on the public entity to establish that the records requested are exempt from inspection. *See City of Farmington v. The Daily Times*, 2009-NMCA-057, ¶ 13-14, 146 N.M. 349, 210 P.3d 246 (stating that the burden is on "the custodian of the records to demonstrate a reason for non-disclosure"), *overruled on other grounds by Republican Party of N.M.*, 2012-NMSC-026, ¶ 16; *see also Estate of Romero ex rel. Romero*, 2006-NMSC-028, ¶¶ 18-19, 139 N.M. 671, 137 P.3d 611 (holding that a public body has the burden of proving that the information requested is not subject to discovery because such information meets the policy interests expressed in the law enforcement exception and that in camera review by the district court of the requested records may be necessary to reach a determination). "The expectation established by IPRA is that records custodians will diligently undertake their responsibility to process and fully respond to requests, including determining what public records are responsive to the request and what records or portions thereof

12

may be exempt from disclosure, communicating the status of a request to the requester, and ultimately providing for inspection of all nonexempt records." *Britton*, 2019-NMCA-002, ¶ 31. Thus, a public body relying on the law enforcement exception to deny a request to inspect public records has the burden to demonstrate that the requested public records qualify as law enforcement records under the statute's definition and contain confidential sources, confidential methods, confidential information, or identification of an individual accused but not charged with a crime. *See* § 14-2-1(A)(4).

{17} At trial, Defendants testified generally about the difficulties created by allowing public access to information regarding ongoing criminal investigations, but failed address the particular records involved in this case. Pacheco spoke generally about the problems that can arise in criminal cases if records are released during the pendency of an ongoing investigation and the dangers such disclosures can often pose to the integrity of the criminal justice system as a whole. Padgett stated similar concerns regarding the impact IPRA disclosures can have on the integrity of a criminal investigation:

> If it's released, then we have no control of what happens to that case. It gets out into the media, it impacts the whole criminal process. So what we do is we're trying to keep the cases as pristine as we can until we resolve it. Then when a case is completed, everything can be released.

Padgett also testified that to release records piecemeal can lead to "inherent

13

prejudice" and "would ultimately affect the decision."

{18}     The DPS records custodian testified that during the time period between Plaintiff's request in April 2015 and DPS's May 2016 disclosure, no one in the DPS records office conducted a document-by-document review of the records Plaintiff sought to inspect. Similarly, the Town stipulated that it "did not review each of the records or recordings in its possession to . . . determine if any of the material was 'confidential' as that term is used in IPRA." When asked to identify which records contained confidential information, Pacheco declined, stating that she would not "piecemeal what should be released and what shouldn't be released." When questioned about her understanding of confidentiality under IPRA's law enforcement exception, Pacheco sought to distinguish the exception in criminal cases from common perceptions of confidentiality:

> I'm not saying that . . . everything . . . in the file is confidential. I'm not saying that at all. I'm saying it should not be released until we conclude our work. Confidential for me is when we're doing a wire tap, when we have informants coming forward, and we seal all of that information. That to me is confidential and should not be released in that sense. But in reference to a criminal case, I'm not saying it is confidential. I am saying our duty is to protect the case until the criminal matter has been resolved.

Padgett testified that she believed the law enforcement exception "should be a cover over all the evidence, so that it is not released in piecemeal[,]" but failed to explain how she reconciled her belief with the specific public records exempted from inspection by the Legislature under the law enforcement exception. Padgett

14

also testified that she did not know of anything in IPRA "that would require the prosecuting agency or any law enforcement agency to do a document-by-document review of each piece of evidence in the case . . . to determine whether or not if you release this piece it would or would not affect the integrity of the investigation[,]" but opined that such a requirement would be "incredibly cumbersome and very, very inefficient."

{19}     Thus, the evidence shows that Defendants failed to take any steps to determine which documents were exempt and which were nonexempt so as to allow for the production of the nonexempt records in accordance with the requirements of IPRA. *See* §14-2-9(A). "A public body that permits only partial inspection—*i.e.*, inspection of some but not all nonexempt responsive records—plainly has not complied with its obligation." *Britton*, 2019-NMCA-002, ¶ 31. Absent an effort by the public body to separate information that is exempt from disclosure from that which is nonexempt and make any nonexempt records available for inspection, *see* § 14-2-9(A), Defendants failed to satisfy their statutory responsibilities to process and fully respond to Plaintiff's requests without delay, *Britton*, 2019-NMCA-002, ¶ 31, contrary to the express language of the statute, and to the purpose of IPRA itself. *See* § 14-2-5 ("[I]t is declared to be the public policy of this state, that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of public

15

officers and employees."). "The expectation established by IPRA is that records custodians will diligently undertake their responsibility to process and fully respond to requests, including determining what public records are responsive to the request and what records or portions thereof may be exempt from disclosure[.]" *Britton*, 2019-NMCA-002, ¶ 31.

{20}     Nothing in the plain language of IPRA authorizes a blanket denial of public access to records, express or implied, solely because those records are the subject of an ongoing criminal investigation. To the contrary, the Legislature explicitly mandated that custodians separate exempt information from nonexempt information so that any and all nonexempt information can be made available for inspection. *See* § 14-2-9(A); *Britton*, 2019-NMCA-002, ¶ 31. By failing to evaluate which records were exempt and which were not, Defendants failed to meet their burden to demonstrate compliance with the statute. *See City of Farmington*, 2009-NMCA-057, ¶¶ 13-14. We therefore conclude that, even assuming the delay attributed to DPS between April 2015, and July 9, 2015, can be considered reasonable under Section 14-2-10, the delay between July 9, 2015, and May 5, 2016, was inherently unreasonable in view of Defendants' failure to establish that the requested records were exempt from inspection under Section 14-2-1(A)(4). *See City of Farmington*, 2009-NMCA-057, ¶¶ 13-14. The district court was correct in concluding that "[t]he delay in providing [nonexempt] records pursuant to the

16

IPRA request of [P]laintiff was an effective denial of the request." *See Britton*, 2019-NMCA-002, ¶ 31 (holding that "an incomplete or inadequate response to inspect public records . . . is not in compliance with IPRA")

**In Camera Review**

{21}   Defendants also assert the district court erred by determining that public entities were required to seek in camera review of the requested information prior to asserting an IPRA exception. Defendants overstate the district court's conclusion. The district court concluded, "The decision by . . . Defendants to deny the IPRA requests of . . . Plaintiff without seeking in camera review of the information requested to determine if it came within the law enforcement exception violated IPRA and entitles the Plaintiff to recover her costs and attorney fees." Viewed in conjunction with the evidence, the district court's ruling appears more of a response to Padgett's testimony that the DPS custodian was not qualified to make the required assessment of the merits of Plaintiff's IPRA request rather than a rule for future application. While it remains the initial responsibility of the custodian—not the court—to determine what public records are responsive to the request and what public records may be exempt from disclosure, *see Britton*, 2019-NMCA-002, ¶ 31, to the extent that the facts of a case may leave the public body questioning the applicability of an exception, in camera review is an appropriate method to ensure compliance. Indeed, our IPRA jurisprudence contemplates in

17

camera review "in circumstances in which the applicability of a disclosure exception is in question." *Am. Civil Liberties Union of N.M. v. Duran*, 2016-NMCA-063, ¶ 45, 392 P.3d 181; *see Republican Party of N.M.*, 2012-NMSC-026, ¶ 49 (acknowledging that "[w]here appropriate, courts should conduct an in camera review of the documents at issue as part of their evaluation of privilege").

{22}     We are cognizant of the potentially problematic ramifications of allowing public access to ongoing criminal investigation records. Indeed, Defendants and amicus curiae, the New Mexico District Attorney's Association, emphasize the concerns in their briefs by describing the litany of difficulties that can arise under such circumstances. The problem presented by the circumstances of this case, however, arose not because Defendants were required to provide public access to records of an ongoing criminal investigation. Instead, they resulted from Defendants' failure to comply with the requirements of IPRA by evaluating the requested records to determine whether they were exempt or nonexempt from inspection. It may have been that all of the requested records were exempt from inspection; however, absent a proper evaluation, Defendants failed to satisfy their burden on the issue. *See Britton*, 2019-NMCA-002, ¶ 33 (holding that "an incomplete or inadequate response to inspect public records . . . is not in compliance with IPRA"); *see also City of Farmington,* 2009-NMCA-057, ¶¶ 13-14 (concluding that the custodian of records has the burden to demonstrate a reason

18

for non-disclosure).

**The Town's Unpreserved Argument**

{23}   The Town additionally argues, for the first time on appeal, that its denial of inspection was permitted under the "as otherwise provided by law" exception to IPRA contained in Section 14-2-1(A)(8). The Town did not make this argument to the district court, and we therefore decline to address it. *See* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."); *see generally Estate of Nauert v. Morgan-Nauert*, 2012-NMCA-037, ¶ 28, 274 P.3d 799 (stating the rule that "[i]n order to preserve error for review, a party must fairly invoke a ruling of the district court *on the same grounds argued in this Court*" and explaining that preservation alerts the district court of the claimed error to allow for correction, allows the opposing party an opportunity to respond, and creates a sufficient record to allow for an informed decision on appeal (emphasis added) (internal quotation marks and citation omitted)).

**CONCLUSION**

{24}   We affirm.

{25}   **IT IS SO ORDERED.**

_____
                                                **JULIE J. VARGAS, Judge**

**WE CONCUR:**

_____
**M. MONICA ZAMORA, Chief Judge**


_____
**BRIANA H. ZAMORA, Judge**

20