**Certiorari Granted, August 30, 2010, No. 32,524**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-080**

**Filing Date: June 25, 2010**

**Docket No. 28,292**

**THE REPUBLICAN PARTY OF NEW MEXICO,**
**and LYN OTT, Individually and in her capacity as**
**Help America Vote Act (HAVA), Director for the**
**Republican Party of New Mexico,**

      **Plaintiffs-Appellants,**

**v.**

**NEW MEXICO TAXATION AND REVENUE**
**DEPARTMENT, MOTOR VEHICLE DIVISION,**
**and LUIS CARRASCO, custodian of records for**
**the New Mexico Taxation and Revenue Department,**
**Motor Vehicles Division,**

      **Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Valerie A. Huling and Nan G. Nash, District Judges**

Bowles and Crow
Jason Bowles
B.J. Crow
Albuquerque, NM

Hunter Law Firm
Colin Hunter
Albuquerque, NM

for Appellants

Long, Pound & Komer, P.A.
Mark T. Baker
Santa Fe, NM

**OPINION**

**CASTILLO, Judge.**

**{1}** Plaintiffs, the Republican Party of New Mexico and Lyn Ott, individually and as director of the Help America Vote Act, appeal from a two-part order granting summary judgment in favor of Defendants, the New Mexico Taxation and Revenue Department (T&RD), the Motor Vehicle Division (MVD) of the T&RD, and Luis Carrasco as custodian of public records for the T&RD (together referred to as "the State"). Plaintiffs requested information from the State pursuant to the Inspection of Public Records Act (IPRA), NMSA 1978, Sections 14-2-1 to -12 (1947, as amended through 2009). The State did provide records in response to the IPRA request, but relying on exceptions to IPRA and privilege, the State redacted much of the information in the documents provided. Plaintiffs filed suit challenging these redactions. The parties filed cross motions for summary judgment. The district court concluded that the redactions were appropriate and granted summary judgment in favor of the State. Plaintiffs now appeal.

**{2}** The public policy of New Mexico entitles "all persons . . . to the greatest possible information regarding the affairs of government and the official acts of public officers and employees." Section 14-2-5. Transparency in government is paramount. However, not all information is subject to public inspection, and there are exceptions to the general proposition. *See, e.g.*, § 14-2-1(A) (listing twelve exceptions to the public's right to inspect public records); *City of Farmington v. The Daily Times*, 2009-NMCA-057, ¶ 8, 146 N.M. 349, 210 P.3d 246 (describing the non-statutory exception to disclosure referred to as the "rule of reason"). In the case before us, the State asserted three exceptions: non-disclosure as required by the federal and state statutes limiting disclosure of motor vehicle records, executive privilege, and attorney-client privilege. After carefully reviewing the record and the arguments of the parties, we affirm the district court.

**I.     BACKGROUND**

**{3}** This case arose as a result of an article by the Associated Press (AP) wherein it was reported that New Mexico Governor Bill Richardson had proposed new regulations that required undocumented aliens to provide additional forms of identification to procure New Mexico drivers' licenses. According to the article, T&RD estimated that nearly 27,000 undocumented aliens had acquired drivers' licenses under the then existing regulations which required undocumented aliens to present only one form of identification—either a passport, federal individual tax identification number, or consular identification card. The article also explained that the Richardson administration had become concerned that some of those licenses might have been issued to individuals who submitted documents of questionable authenticity and, as a result, the administration directed the MVD to perform an audit to evaluate that concern. On July 25, 2006, only a few months after publication of

the AP article, Plaintiffs, wanting to "research whether undocumented aliens were voting in federal, state, and local elections in New Mexico," requested the following categories of information from the State pursuant to IPRA:

> 1. All lists, compilations, and summaries thereof of drivers' licenses that have been issued to individuals who are not citizens or legal residents of the United States pursuant to [NMSA 1978,] § 18-19-5.12(B) [sic] [Request #1]; and
>
> 2. All memoranda, notes, reports, electronic mail messages, or other documents that identify or describe the number of drivers' licenses that have been issued to individuals who are not citizens or legal residents of the United States pursuant to [NMSA 1978,] § 18-19-5.12(B) [sic][.] [Request #2]

As an alternative to number [two] . . . you may produce the following:

> All documents used as the basis for the [T&RD's] statement [in the AP article] that . . . "27,000 immigrants have obtained licenses" . . . [Alternative to Request #2]; and
>
> 3. All documents discussing, relating to, or created in response to instructions from the governor to audit records as described in the AP article[.]  [Request #3]

**{4}** The State provided Plaintiffs with 150 pages of records which consisted of e-mails between the Governor's office and the T&RD, e-mails between the T&RD and the MVD, and spreadsheets produced by the MVD. However, a great portion of the information within those documents was redacted. MVD explained to Plaintiffs that the redactions were legally necessary and cited the following grounds for this claim: (1) Section 14-2-1(A)(12), an exception to the right to request public documents under IPRA; (2) the New Mexico Driver Privacy Protection Act (NMDPPA), NMSA 1978, Section 66-2-7.1 (2007); (3) Rule 11-503 NMRA, attorney-client privilege; and (4) executive privilege.

**{5}** Unsatisfied with the State's response, Plaintiffs filed suit. Plaintiffs sought an order compelling the State to produce copies of the documents without the redactions together with any other documents pertinent to their request. Cross-motions for summary judgment followed. The district court entered a partial ruling on the parties' cross-motions concluding that the federal Drivers Privacy Protection Act (DPPA) 18 U.S.C. §§ 2721 to -25 (1994, as amended through 2000), and the NMDPPA require the State to maintain the confidentiality of drivers' personal information and, thus, the State appropriately redacted personal information from the spreadsheets provided to Plaintiffs. Accordingly, the district court granted summary judgment in the State's favor with respect to this aspect of Plaintiffs' claim. As to the remaining redactions—those made pursuant to executive and attorney-client privileges—the district court reserved decision pending an in camera review of the

3

communications without redactions.

**{6}** After the in camera review, the district court granted summary judgment to the State with respect to the remainder of Plaintiffs' claims. Plaintiffs filed a motion for reconsideration which was subsequently denied. This appeal followed.

## II.    DISCUSSION

**{7}** On appeal, Plaintiffs take issue with the district court's conclusions that (1) the State properly redacted personal drivers' information from the spreadsheets, (2) the redactions carried out pursuant to executive privilege were proper, and (3) the redactions carried out pursuant to attorney-client privilege were proper. We begin with the applicable standard of review and then  address Plaintiffs' arguments in turn.

### A.    Standard of Review

**{8}** The issues on appeal require us to interpret provisions of the DPPA and NMDPPA. For issues of statutory construction, our standard of review is de novo. *Bell v. Estate of Bell*, 2008-NMCA-045, ¶ 11, 143 N.M. 716, 181 P.3d 708, *cert. quashed*, 2008-NMCERT-011, 143 N.M. 532, 202 P.2d 125. We are also required to review the district court's decisions regarding the applicability and construction of the attorney-client and executive privileges. The district court's construction of those privileges is a matter of law which is also subject to de novo review. *Public Serv. Co. of N.M. v. Lyons,* 2000-NMCA-077, ¶ 10, 129 N.M. 487, 10 P.3d 166.

**{9}** Plaintiffs appeal from the district court's orders in favor of the State on the parties' cross-motions for summary judgment. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Weise v. Wash. Tru Solutions, L.L.C.*, 2008-NMCA-121, ¶ 2, 144 N.M. 867, 192 P.3d 1244 (internal quotation marks and citation omitted). "[W]here the parties agree to have the [district] court decide a case on cross-motions for summary judgment and where neither party claims that disputed facts exist, this Court will review the case as presented by the parties and decide it one way or the other." *Farmington Police Officers Ass'n Commc'n Workers of Am. Local 7911 v. City of Farmington*, 2006-NMCA-077, ¶ 33, 139 N.M. 750, 137 P.3d 1204 (Pickard, J., specially concurring in part and dissenting in part).

### B.    Redaction of Personal Driver's Information

**{10}** Plaintiffs contend that the State improperly redacted personal drivers' information from the materials provided in response to Plaintiffs' IPRA Request #1 and Alternative to Request #2. IPRA provides that every citizen of this state has a right to inspect any public records of this state except as otherwise provided by law. Section 14-2-1(A)(12). The State relies on an exception set forth in state and federal statutes. *See The Daily Times*, 2009-NMCA-057, ¶ 11 (holding that the language "[except] as otherwise provided by law" has generally been interpreted as referring to exceptions contained in other statutes (internal quotation marks and citation omitted)). According to the State, it was required to redact

personal driver's information under the terms of the DPPA and the NMDPPA. Both statutes generally restrict the disclosure of personal information in a driver's motor vehicle record without the driver's affirmative consent unless certain specified exceptions to the prohibition apply. *See* 18 U.S.C. § 2721(a)(1) (stating that "[a] [s]tate department of motor vehicles, and any officer, employee, or contractor thereof, shall not knowingly disclose or otherwise make available to any person or entity: . . . personal information . . . about any individual obtained by the department in connection with a motor vehicle record"); 18 U.S.C. § 2721(b) (listing exceptions); § 66-2-7.1(A) (stating that "[i]t is unlawful for any department or bureau employee or contractor . . . to disclose to any person other than another employee of the department or bureau any personal information about an individual obtained by the department or bureau in connection with a driver's license or permit . . . [except as provided in enumerated exceptions (1) through (11)])".

{11}    The DPPA is a reflection of "the ongoing tug-of-war between the public's right to know and individual privacy interests." Maureen Maginnis, *Maintaining the Privacy of Personal Information: The DPPA and the Right of Privacy*, 51 S.C. L. Rev. 807, 808 (2000). Before passage of the DPPA, the majority of states allowed almost total public access to personal information in motor vehicle records. Oliver J. Kim, Note, *The Driver's Privacy Protection Act: On the Fast Track to National Harmony or Commercial Chaos?*, 84 Minn. L. Rev. 223, 243 (1999). A major impetus behind passage of the legislation was the growing concern about crimes committed by individuals who used motor vehicle records to identify and locate victims. Deborah F. Buchman, Annotation, *Validity, Construction, and Application of Federal Driver's Privacy Protection Act, 18 U.S.C.A. §§ 2721 to 2725*, 183 A.L.R. Fed. 37, § 2 (2003). One highly publicized case involved actress Rebecca Schaeffer, who became a victim in 1989 when she was murdered outside her apartment by a stalker who obtained her unlisted address from the California Department of Motor Vehicles. Maginnis, *supra*, at 809.

{12}    Congress was also concerned about what had become a common practice in many states: the sale of information in motor vehicle records for marketing purposes. This practice inundated citizens' mail boxes across the country with junk mail and unwanted solicitations. 183 A.L.R. Fed. 37, § 2. Passage of the DPPA in 1994 regulated the disclosure and resale of motor vehicle records, and this prompted a number of constitutional challenges to the statute. *See* Thomas H. Odom & Gregory S. Feder, *Challenging the Federal Driver's Privacy Protection Act: The Next Step in Developing a Jurisprudence of Process-Oriented Federalism Under the Tenth Amendment*, 53 U. Miami L. Rev. 71, 73 (1998). The issues were answered in a unanimous opinion of the United States Supreme Court in *Reno v. Condon*, 528 U.S. 141, 150-51 (2000), which held that the DPPA did not run afoul of the principles of federalism and that the statute was a valid exercise of congressional authority under the Commerce Clause. As previously discussed, the NMDPPA contains restrictions and exceptions similar to those in the DPPA.

{13}    The State's position is that the information redacted from the spreadsheets indisputably qualifies as personal information protected from disclosure under both the DPPA and the NMDPPA. The State redacted two types of information: (1) the names, driver's license numbers, and addresses of drivers who obtained their licenses with proof of

5

identification other than a social security number and (2) individual tax identification numbers. Drivers' names, license numbers, and addresses are specifically designated by these statutes as personal information. *See* 18 U.S.C. § 2725(3) (defining "personal information" under the DPPA as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information"); NMSA 1978, § 66-1-4.14(F) (1999) (defining "personal information" under the NMDPPA as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address other than zip code, telephone number and medical or disability information"). Although individual tax identification numbers are not specifically listed, they are similar to social security numbers and meet the definition of personal information because they provide identifying information. We agree with the State that the information redacted from the spreadsheets is personal information governed by the DPPA and the NMDPPA. This, however, does not end our inquiry.

**{14}** According to Plaintiffs, their request was based on one of the stated exceptions to the disclosure prohibitions in the DPPA and the NMDPPA, specifically the exception that allows disclosure of personal driver's information for research activities. *See* 18 U.S.C. § 2721(b)(5) ("Personal information . . . [may] be disclosed . . . [f]or use in research activities, and for use in producing statistical reports, so long as the personal information is not published, redisclosed, or used to contact individuals."); § 66-2-7.1(A)(4) ("It is unlawful . . . to disclose . . . any personal information . . . except . . . for use in research activities and for use in producing statistical reports, so long as the personal information is not published, redisclosed or used to contact individuals[.]"). We observe that Plaintiffs did not initially indicate that their request was based on this exception, and they did not assert this as a basis for disclosure until after filing their complaint. More importantly to the evaluation of this issue, however, is Plaintiffs' failure to provide us with any citation or guidance to assist in defining what the term "research" means in the context of the DPPA and the NMDPPA. Nor have Plaintiffs provided any facts upon which the exception could be based. This Court has no duty to review an argument that is unclear or inadequately developed. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (stating that we will not review unclear or undeveloped arguments).

**{15}** Even if we were to agree that the request was for purposes of research, there are limitations on the use of the information once obtained, and this undercuts Plaintiffs' argument. The research exception explicitly prohibits the redisclosure or publication of any personal driver's information received pursuant to the research exception and, further, prohibits the use of that information to contact the individuals from whom the information was obtained. *See* 18 U.S.C. § 2721(b)(5) ("Personal information . . . [may] be disclosed . . . [f]or use in research activities . . . so long as the personal information is not published, redisclosed, or used to contact individuals."); § 66-2-7.1(A)(4) (same). To achieve the stated objective underlying their request, i.e., to challenge voter eligibility pursuant to NMSA 1978, Section 1-4-22 (1995), Plaintiffs would be required to disclose or publish the personal driver's information they receive. Under Section 1-4-22, only specific parties are permitted to advance a claim challenging voter eligibility. *See* § 1-4-22(A) (specifying that only "the secretary of state, the county chairman of any major political party or any twenty petitioners

6

who are voters of the county may file and present to the district court a verified petition alleging either on personal knowledge or on information and belief that certain persons registered, named in the petition, are not qualified electors in the precincts named in the petition"). To establish voter fraud, Plaintiffs would be required to disclose the personal information obtained from the motor vehicle records to one of these parties. Furthermore, in submitting their claim to the district court, Plaintiffs would necessarily disclose the information a second time, this time to the district court. Finally, it seems inevitable that Plaintiffs' attempts to verify voter eligibility would undoubtedly precipitate a process through which that personal information would be used to contact the individuals from whom that information was obtained. The research exception cannot be used under these circumstances.

{16}    In their final argument on this issue, Plaintiffs contend that because the State makes drivers' personal information available to third-party vendors, it is required to make the information available to them. Again, Plaintiffs have failed to provide any authority to support this argument. *See State v. King*, 2007-NMCA-130, ¶ 17, 142 N.M. 699, 168 P.3d 1123 (refusing to consider arguments unsupported by authority or analysis). We observe that the DPPA and the NMDPPA list a number of exceptions, and it is possible that a third-party vendor would be entitled to personal information under one of the exceptions. Plaintiffs do not develop this issue, nor is it before this Court. What is before this Court is whether, based on the record and arguments before us, the State properly redacted personal information from lists of motor vehicle records. In this regard, we reject Plaintiffs' assertion that they are entitled to the unredacted information and hold that the district court did not err in granting summary judgment in favor of the State with respect to this portion of Plaintiffs' request.

## C.    Redactions Pursuant to Executive Privilege

{17}    In their second issue, Plaintiffs contend that the district court erred when it determined that the State was entitled to redact and withhold requested communications on the grounds of executive privilege. Before we address Plaintiffs specific arguments, we provide a short history of executive privilege and summarize what it involves under New Mexico law.

### 1.    Executive Privilege

{18}    "Since the beginnings of our nation, executive officials have claimed a variety of privileges to resist disclosure of information the confidentiality of which they felt was crucial to fulfillment of the unique role and responsibilities of the executive branch of our government." *In re Sealed Case*, 121 F.3d 729, 736 (D.C. Cir. 1997). Among the categories of executive privilege, two are primary: the most oft-cited deliberative process privilege and the chief executive communications privilege. Matthew W. Warnock, Comment, *Stifling Gubernatorial Secrecy: Application of Executive Privilege to State Executive Officials*, 35 Cap. U. L. Rev. 983, 985 (2007). Although closely affiliated, the two privileges are distinct and have different scopes. *In re Sealed Case*, 121 F.3d at 745. Both are "designed to protect executive branch decision[]making, but one applies to decision[]making of executive

7

officials generally, the other specifically to decision[]making of the [executive]." *Id.*

## 2.      Executive Privilege in New Mexico

**{19}** In *State ex rel. Attorney General v. First Judicial District Court of New Mexico*, 96 N.M. 254, 257-58, 629 P.2d 330, 333-34 (1981), the New Mexico Supreme Court recognized executive privilege as a necessity for the successful functioning of an independent executive branch of government. The "recognition of an executive privilege is required by the Constitution of the State of New Mexico," specifically Article III, which provides for the separation of powers among the three branches of government. *First Judicial*, 96 N.M. at 257, 629 P.2d at 333. The purpose of the privilege is to

> safeguard the decision[]making process of the government by fostering candid expression of recommendations and advice and to protect this process from disclosure. Executive personnel who fear or expect public dissemination of their remarks may temper their comments because of their concern for their own personal interests, safety, or reputation.

*Id.* at 258, 629 P.2d at 334.

**{20}** The privilege is not absolute. *Id.* Although the need for confidentiality among the executive is worthy of protection, the court must determine whether the particular circumstances of a case allow the imposition of the privilege. *Id.* This is done by balancing the competing interests of the "public's interest in preserving confidentiality to promote intra-governmental candor with the individual's need for disclosure of the particular information sought." *Id.*

## 3.      Plaintiffs' Arguments

**{21}** In their challenge to the district court's decision, Plaintiffs make two arguments. First, they claim that the State is prohibited from withholding information sought through an IPRA request by claiming executive privilege. Plaintiffs also assert that executive privilege is inapplicable on its merits. We address these arguments in turn.

## a.      Statutory Construction

**{22}** Plaintiffs rely on a canon of statutory construction known as *expressio unius est exclusio alterius*—the inclusion of one thing implies the exclusion of another. Plaintiffs contend that IPRA was "enacted" after *First Judicial* and that attorney-client privilege was expressly included as an exception to disclosure, while  executive privilege was not. According to Plaintiffs, the omission of executive privilege as a listed exception evidences the Legislature's intent to exclude the privilege as a basis for withholding documents requested under IPRA.

**{23}** First, Plaintiffs are incorrect that IPRA was enacted after *First Judicial*. IPRA was first enacted in 1947 by 1947 N.M. Laws, Chapter 130, Section 1. *First Judicial* was

decided in 1981. The 1947 version of IPRA did not list either privilege as an exemption. *Id.* IPRA was later recompiled as Sections 14-2-1 through -12 and amended in 1973, 1981, 1993, and 1998. It was not until 1999 that IPRA was amended to include attorney-client privilege as a specifically listed exemption. The current version of IPRA continues to exempt documents subject to the attorney-client privilege, and there is no specific mention of executive privilege. We evaluate Plaintiffs' argument in this context.

**{24}** We review statutory construction de novo. *The Daily Times*, 2009-NMCA-057, ¶ 6. In ascertaining legislative intent, we first look to the statute's plain language, and when the "statute's language is clear and unambiguous, we give the statute its plain and ordinary meaning and refrain from further interpretation." *Id.* (internal quotation marks and citation omitted). There are currently twelve statutory exceptions provided within IPRA itself. *See* § 14-2-1(A)(1)-(12). We agree that attorney-client privilege is a specific exemption and executive privilege is not, but the list of specific exemptions is not exhaustive. The last exception excepts those public records that are confidential "as otherwise provided by law," Section 14-2-1(A)(12), and "has generally been interpreted as referring to exceptions contained in other statutes and properly promulgated regulations." *The Daily Times*, 2009-NMCA-057, ¶ 11. In addition to the statutory exceptions, "our Supreme Court has recognized a non-statutory exception to disclosure." *Id.* ¶ 8. "This non-statutory exception, also referred to as the 'rule of reason,' . . . is applicable . . . to claims of confidentiality asserted for public records that do not fall into one of the statutory exceptions[.]" *Id.* (internal quotation marks and citation omitted). Under this exception, a district court is required "to balance the fundamental right of all citizens to have reasonable access to public records against countervailing public policy considerations which favor confidentiality and nondisclosure." *Id.* (internal quotation marks and citation omitted). The countervailing public policy underlying executive privilege can support a determination in favor of confidentiality. Accordingly, we reject Plaintiffs *expressio unius* argument. The fact that executive privilege is not listed as a specific exception does not mean the Legislature has prohibited the assertion of the privilege as a basis for protecting the confidentiality of certain documents requested under IPRA.

### b.    Applicability on its Merits

**{25}** Plaintiffs also argue that the privilege is inapplicable on its merits. Plaintiffs rely on language in *The Inspection of Public Records Act: A Compliance Guide for New Mexico Public Officials and Citizens*, p. 22 (6th ed. 2009), [http://www.nmag.gov/pdf/AGO IPRA Guide 6th Ed.pdf](http://www.nmag.gov/pdf/AGO IPRA Guide 6th Ed.pdf): "The [executive] privilege is not absolute and may not be used unless revelation of a particular document will truly compromise the agency's decision-making process, and thus outweighs the public's interest in disclosure." We agree that the privilege is not absolute. *First Judicial*, 96 N.M. at 258, 629 P.2d at 334. As to the burden, Plaintiffs argue that the State did not meet its burden of showing that disclosure of the documents would truly compromise the agency's decision-making process because (1) the documents were in the custody of the MVD, not the Governor's office; (2) the communications were between mid to low-level employees; and (3) none of the documents are part of the internal policy-making processes of the Governor's office. We observe that no argument was raised below or on appeal regarding the difference, if any, between the evaluation of the privilege

9

in the context of discovery and in the context of an IPRA request. Similarly, no argument was made that the district court failed to follow the rule of reason in applying the privilege or that the privilege was improperly asserted. Before we address Plaintiffs' three points, we digress to review the district court's evaluation of the privilege.

**{26}** The district court followed the requirements regarding the assertion of executive privilege in the context of discovery. The State had prepared a log of all documents produced in response to the IPRA request. The log listed the type of document, the reason produced, its authors, recipients, and subject, the date created, subject matter, and the basis for the redactions made to the document. Executive privilege was asserted as the basis for redactions to communications regarding: (1) New Mexico's negotiations with the Mexican government to obtain access to Matricula Consular documents; (2) legal and policy discussions about New Mexico drivers who applied for their licenses using documents whose authenticity had not been confirmed by the T&RD; and (3) legal and policy discussions related to the audit process.

**{27}** At the hearing on the cross motions for summary judgment, the district court listened to the arguments of the parties as to the operation of the privilege on the documents indicated. The district court determined that the privilege had been invoked; that Plaintiffs had shown that their interest in protecting the integrity of the voting process constituted good cause for requesting the information; and that in order to properly evaluate the privilege, it would reserve ruling whether the privilege applied "pending an in camera review of the communications at issue." Under the "rule of reason," the court is to "view, in camera, the information in the possession of the custodian and make a determination regarding the competing public policies based on that information." *The Daily Times*, 2009-NMCA-057, ¶ 13.

**{28}** The State provided the district court with copies of the subject documents without redactions. The district court determined that executive privilege exists basically to "aid governmental decision[]making" and undertook the in camera review to "determine whether or not there is good cause for disclosure." The court stated that it would be looking for anything that "would suggest . . . a compromise of the integrity of our voting process" because that type of information is not privileged. The record shows that the court explained that it would also evaluate each document to determine if it was the document as claimed, if it was to a third party outside the department, and if the description of the document was accurate. After performing the in camera inspection, the district court issued findings determining that "[w]ith regard to executive privilege, none of the documents reviewed contain information that would suggest the voting process in this state has been compromised." As a result, the court granted the State's cross-motion for summary judgment.

**{29}** We now turn to Plaintiffs' points. Here, the documents redacted were communications between executive personnel within the Office of the Governor, the T&RD, and the MVD. Plaintiffs assert that the documents in question were not entitled to protection because the documents were in the custody of the MVD—not the Governor's office. The T&RD is a cabinet department in the executive branch. NMSA 1978, § 9-11-4 (2005). The

10

MVD is a division of the T&RD.  Section 9-11-4(D).  The communications were from employees of these executive departments.  We do not address the document custody issue because Plaintiffs have failed to cite authority to support the proposition that custody of a document in one executive agency as opposed to another affects the analysis.  *See King*, 2007-NMCA-130, ¶ 17 (declining to consider arguments unsupported by authority).

**{30}**    Plaintiffs also argue that the privilege cannot be extended to communications other than those relevant to the internal policy-making processes of the Governor's office.  In this regard, Plaintiffs rely on *In re Sealed Case*, 121 F.3d 729, for their argument that the privilege only applies to "high level" members of the executive branch, not to lower level employees.  Further, Plaintiffs assert that they have not located any case that "extends the privilege broadly to any employee within an executive branch agency" as adopted by the district court in this case.

**{31}**    First, we observe that Plaintiffs' argument appears to be based on the executive communications arm of executive privilege—the language relied on by Plaintiffs refers to this arm of the privilege, not the deliberative process sub-category.  "'[E]xecutive privilege' is generally used to refer to a wide variety of evidentiary and substantive privileges that courts accord the executive branch."  *In re Sealed Case*, 121 F.3d at 735 n.2.  Two of the arms of the privilege are the executive communications privilege and the deliberative process privilege.  Russell L. Weaver & James T.R. Jones, *The Deliberative Process Privilege*, 54 Mo. L. Rev. 279, 284-91 (1989); *see* Warnock, *supra*, at 984 (discussing the distinction between the two types of executive privilege).

**{32}**    In *First Judicial*, our Supreme Court described executive privilege in general terms and relied on cases dealing with both categories of the privilege.  *United States v. Nixon*, 418 U.S. 683, 706, 712 (1974) (rejecting an absolute and unqualified executive communications privilege and affirming the inspection of certain tape recordings and documents relating to conversations between the President and his aides and advisors), *superseded by rule as stated in People v. Montoya*, 753 P.2d 729 (Colo. 1988) (en banc); *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966) (dealing with "recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated"), *aff'd*, 384 F.2d 979 (D.C. Cir. 1967).  The subject documents in *First Judicial* consisted of material obtained by the attorney general from corrections officers and other executive department personnel relating to the 1980 Penitentiary Riot.  *First Judicial*, 96 N.M. at 258, 629 P.2d at 334.  Although the public policy underpinnings of both types of executive privilege are discussed in *First Judicial*, the type of privilege upon which the case ultimately turned falls into the sub-category of the deliberative process privilege.  *See, e.g.*, Michael N. Kennedy, Comment, *Escaping The Fishbowl: A Proposal To Fortify The Deliberative Process Privilege*, 99 Nw. U. L. Rev. 1769, 1778 n.64 (2005) (listing New Mexico as a state that has created a deliberative process privilege for state agencies).  Consequently, Plaintiffs' arguments do not go to the type of privilege asserted in that case.

**{33}**    Second, we question Plaintiffs' legal premise.  In evaluating documents pertaining to White House counsel's investigation of the Secretary of Agriculture, the court in *In re Sealed Case* held that the executive communications privilege applied to communications

11

authored by White House counsel and other top presidential advisers who had "broad and significant responsibility for investigating and formulating the advice to be given the President on the particular matter to which the communications relate." 121 F.3d at 758. In addition, the court analyzed whether the privilege applied to documents authored by a legal extern and to documents for which no author was listed. *Id.* Although the court recognized that the legal extern "did not exercise broad and significant responsibility for the . . . investigation, and therefore the documents authored by the legal extern do not, on their own, qualify for the presidential privilege," it nevertheless determined that the privilege applied because the documents authored by the extern were created at the request of the two associate White House counsel who did have broad and significant responsibility for the investigation and were received by them. *Id.* Along the same lines, the three documents with no author indicated were solicited and received by staff with the appropriate responsibility. *Id.* It becomes clear that the application of the privilege does not turn solely on the job level of the person creating the document. Thus, Plaintiffs' argument is not supported by the authority they cite.

**{34}** We further conclude that the State met its burden that on balance, the interests of the public in keeping the documents confidential outweigh the interests of the Plaintiffs in having them disclosed. The State based its argument on the premise that public disclosure of certain communications would chill the open exchange of opinions and recommendations between government officials and that the privilege is intended to protect the government's decision-making process, its consultative functions, and the quality of its decisions. The documents redacted relate to the development of documents necessary for New Mexico's negotiations with the Mexican government regarding identification confirmation. They also include discussions regarding how to deal with New Mexico drivers who applied for licenses using documents the MVD was unable to confirm as well as discussions related to the audit process. These materials were generated as part of the executive branch's development of policy concerning: (1) the future issuance of drivers' licenses to undocumented aliens; (2) how best to verify the documents provided to the MVD by those aliens; and (3) how best to involve the Mexican government in that process in the future. Accordingly, we conclude that the district court properly determined that executive privilege was applicable in this case.

**{35}** Plaintiffs also complain that the district court's broad application of the executive privilege would render "virtually all communications and records generated by New Mexico state agencies and departments subject to a claim of executive privilege," thus allowing these documents to be "[kept] secret from the public at the sole discretion of that department or agency[] without any independent oversight or review." This is not the case. As occurred here, once the privilege is asserted, there is a process to evaluate whether that assertion is proper under IPRA.

**{36}** In conclusion, we hold that the district court did not err in concluding that the redactions carried out pursuant to executive privilege were proper. As described above, the redacted information was properly withheld by the State and, thus, the State is entitled to judgment as a matter of law on this issue.

**D. Redactions Pursuant to Attorney-Client Privilege**

**{37}** Section 14-2-1(A)(6) exempts from disclosure documents protected by the attorney-client privilege. In its first argument as to this privilege, Plaintiffs claim that it is inapplicable to the communications in question because "[a]n attorney for an agency . . . is not also the personal attorney for each of the agencies employees" and the communications in question "were sent in and among staff attorneys and management, while some communication involved lower[-]level employees, for which there is not a privilege."

**{38}** Plaintiffs devote less than a full page of their brief-in-chief to these contentions, fail to cite authority, and do not specify to which communications their arguments refer. The argument is not adequately developed or supported. As previously stated, we do not review unclear or inadequately developed arguments or arguments for which no authority has been cited. *See King*, 2007-NMCA-130, ¶ 17 (refusing to consider arguments unsupported by authority or analysis); *Headley*, 2005-NMCA-045, ¶ 15 (stating that we will not review unclear or undeveloped arguments).

**{39}** We now turn to Plaintiffs' second argument. They cite Rule 11-511 NMRA, and *Gingrich v. Sandia Corporation*, 2007-NMCA-101, 142 N.M. 359, 165 P.3d 1135, as support for their assertion that "[the State] ha[s] waived any claim of attorney-client privilege . . . by disclosing the information sought by the Plaintiffs to the media and others." Under Rule 11-511, the attorney-client privilege is waived where the holder of the privilege "voluntarily discloses or consents to disclosure of any significant part of the matter or communication." As we demonstrate below, Plaintiffs have not shown that any of the communications redacted pursuant to attorney-client privilege were disclosed.

**{40}** The following is a brief and general description of the documents redacted pursuant to attorney-client privilege and their content: discussions between general counsel for the Governor's office and executive branch personnel regarding a proposed letter to officials in the Mexican government describing the policies surrounding the issuance of drivers' licenses in New Mexico; discussions between executive branch officers and counsel for the T&RD related to a potential audit of drivers who obtained their licenses by submitting an individual tax identification number; discussions between counsel for the T&RD and MVD personnel reviewing proposed drafts of letters to be sent to drivers who received New Mexico drivers' licenses but whose documentation ultimately could not be verified; correspondence between the MVD director and in-house counsel for the T&RD regarding specific statutes and regulations governing the process under which an individual may obtain a driver's license in New Mexico; legal analysis performed by counsel for the T&RD for the benefit of the directors of the MVD and T&RD; and communications directed to the Deputy Chief Counsel for the Office of the Governor regarding the status of the audit on drivers who obtained their licenses by submitting an individual tax identification number. Plaintiffs have failed to direct us to any specific instance where any of the redacted documents were disclosed. Accordingly, we conclude that the district court did not err in concluding that the redactions made pursuant to attorney-client privilege were proper.

**CONCLUSION**

**{41}** Based on the foregoing, we affirm the district court's order of summary judgment in this case.

**{42}  IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Chief Judge**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**Topic Index for** _Republican Party of N.M. v. N.M. Taxation & Rev. Dep't_**, Docket No. 28,292**

| | |
|---|---|
| **AT** | **ATTORNEYS** |
| AT-AP | Attorney-Client Privilege |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-SJ | Summary Judgment |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-NM | New Mexico Constitution, General |
| | |
| **EV** | **EVIDENCE** |
| EV-AP | Attorney-Client Privilege |
| EV-PV | Privileges |
| | |
| **GV** | **GOVERNMENT** |
| GV-EB | Executive Branch |
| GV-EP | Executive Privilege |
| GV-PR | Public Records |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |