This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**ROBERT RICHARDS,**

    Petitioner-Appellant,

v.                                                   **NO. 30,796**

**NEW MEXICO DEVELOPMENTAL**
**DISABILITIES PLANNING COUNCIL,**
**OFFICE OF GUARDIANSHIP and**
**PATRICK PUTNAM, Records Custodian,**

    Respondents-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Sarah M. Singleton, District Judge**

Robert Richards
Santa Fe, NM

for Pro Se Appellant

Stephen A. Vigil
Santa Fe, NM

for Appellees

## MEMORANDUM OPINION

**KENNEDY, Judge.**

Robert Richards (Petitioner) appeals from the district court's ruling that he is not entitled access to a requested report under the Inspection of Public Records Act (IPRA) because the report is an attorney work product. [RP 98] Our notice proposed to affirm, and both parties filed timely memorandums in response. [Ct.App.File, white and green clips] We remain unpersuaded by Petitioner's arguments and, therefore, affirm.

Petitioner continues to argue that the district court erred in ruling that the H&H Private Investigations, P.C. Report (the Report) is an attorney work product that is not subject to disclosure under IPRA. *See* NMSA 1978, §§ 14-2-1 to -12 (1947, as amended through 2009). As provided in IPRA, "[e]very person has a right to inspect any public records of this state *except: as otherwise provided by law*." *See* NMSA 1978, § 14-2-1(A)(12) (2005) (emphasis added). The law provides that the exceptions, however, include the "work product" exception. *See* Rule 1-026(B)(5) NMRA ("In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation."); *see also Republican Party of N.M. v. N.M. Taxation & Revenue Dep't*, 2010-NMCA-080, ¶ 23, 148 N.M. 877, 242 P.3d 444 (recognizing

the attorney-client privilege as an exemption), *cert. granted*, 2010-NMCERT-008, 148 N.M. 943, 242 P.3d 1289.

In the present case, as set forth in our notice, the district court judge sua sponte called for a hearing after reading the annual report submitted to her by one of the corporate guardians for Petitioner, Developmental Disabilities Planning Council, Office of Guardianship and Patrick Putnam (Respondents). [RP 59] At the hearing, the corporate guardian expressed concerns about the fitness of one of Respondents' contract guardians to serve as guardian for an incapacitated person, [RP 59] and the district court ordered that the guardian be temporarily removed pending a further hearing. [RP 59] As a consequence of the concerns raised about the guardian, Respondents initiated an investigation of the guardian's performance with regard to the incapacitated person, as well as with regard to her performance of other persons for whom she served as guardian. [RP 59, 69] To facilitate the investigation, Respondents, through their counsel, commissioned H&H Private Investigations, [RP 58-59, 61, 69-70] who prepared the Report at issue. [RP 59] The investigation was necessary in part because the guardian was not cooperative in providing requested information stemming from the guardianship proceeding. [RP 70] Moreover, as provided in the affidavit of Respondents' attorney, the Report was prepared "so that the Office of Guardianship could make strategic decisions regarding the case that was

3

*in litigation at the time, as well as other guardianship cases.*" (Emphasis added.) [RP 69]  In this regard, we note that litigation did indeed ensue, during which, Petitioner tried to enter the case on behalf of guardian, but was disqualified from doing so due to a conflict and was not allowed to intervene. [RP 70]  Given the foregoing, we agree with the district court's conclusion that the Report at issue was generated in connection with ongoing litigation with regard to the guardianship proceeding and in anticipation of other potential litigation and, thus, is a work product that is not subject to disclosure under IPRA.  [RP 58, 99]  *See generally Hartman v. Texaco Inc.*, 1997-NMCA-032, ¶ 11, 123 N.M. 220, 937 P.2d 979 (recognizing that work product is material prepared in anticipation of civil litigation by a party, a party's attorney, and other people employed by a party).

While Petitioner argues that the Report was generated to address concerns only with regard to the remaining protected persons of the guardian, [white clip, MIO/3-4] this is an overly narrow view of the proceedings.  As noted, the affidavit of Respondents' attorney shows that the Report was prepared so that Respondents could make strategic decisions regarding "the case that was in litigation at the time, as well as other guardianship cases." [RP 69]  Because the guardian's fitness to serve as guardian was at issue, any investigation of the guardian would necessarily extend to her performance with regard to all persons for whom she served as guardian, not just

4

to the incapacitated person in the proceeding in which a concern about her fitness was initially raised.

We disagree also with Petitioner's assertion that affirmance of the district court's ruling that the Report is a work product somehow contravenes the holding in *Hartman* with regard to burden of proof. [MIO 10] As we acknowledged in our notice, it was Respondents' burden, as the party asserting the work product exception, to show that the Report was a work product. This burden was satisfied by the counsel's affidavit. *Id.* ¶ 20 (providing that the burden may be met by use of an affidavit). We disagree also with Petitioner's characterization of the attorney's affidavit [RP 69] as conclusory and self-serving. [white clip, MIO/5] Our review of the affidavit provides that the affidavit provides detailed information on the background of the dispute and that the Report was generated to address concerns about the guardian's fitness and provides that the Report was generated, so that strategic decisions could be made for a case that was in litigation at the time. [RP 69] *See Hartman*, 1997-NMCA-032, ¶¶ 20-21 (providing that a party may meet its burden to show a document is an attorney work product by submitting detailed affidavits setting forth precise facts to support the immunity claim wherein litigation is "the driving force" behind the preparation of the challenged document (internal quotation marks and citation omitted)). This is not a situation wherein the Report was

generated, and then, ultimately, ended up being used in litigation, but instead where the Report was prepared as a consequence of a dispute and litigation. Whether or not the Report could actually be introduced into evidence [white clip, MIO/4] is not determinative. Rather, the determinative factor is that the Report was instigated by Respondents' counsel in the context of a guardianship proceeding in which the guardian's fitness was at issue, thereby, satisfying the litigation or potential litigation requirement.

Moreover, we also disagree with Petitioner's contention that Respondent's duty to monitor its guardians somehow precludes applicability of the work product exception when litigation or potential litigation arises as a consequence of this duty. [white clip, MIO/7-8; green clip, Response/4] As provided in NMSA 1978, Section 28-16B-4(A)(4)(2009), Respondents are required to monitor and enforce all guardianship contracts and may pursue legal remedies against contractors for non-compliance with contract provisions. Because the Report at issue was generated in response to litigation and other potential litigation, it is subject to the work product exception. Lastly, while Petitioner could have obtained a copy of the Report upon a showing of substantial need and undue hardship, *see* Rule 1-026(B)(5) NMRA, we agree with the district court that Petitioner failed to make this showing. [RP 99] We thus reject Petitioner's argument, as did the district court, [RP 99] that by "merely

making a request under IPRA he has shown substantial need." [white clip, MIO/4; green clip, Response/4-5] If an IPRA request alone was a sufficient showing of undue hardship, then IPRA would not include Section 14-2-1(A), which recognizes that there are exceptions to the right to inspect. *See, e.g.*, *Smith v. Arizona Pub. Serv. Co.*, 2003-NMCA-097, ¶ 5, 134 N.M. 202, 75 P.3d 418 (stating that "[w]e look first to the plain meaning of the statute's words, and we construe the provisions of the Act together to produce a harmonious whole").

Based on our notice and the foregoing discussion, we affirm.

**IT IS SO ORDERED.**


_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**


_____
**MICHAEL E. VIGIL, Judge**


_____
**LINDA M. VANZI, Judge**