**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2012-NMCA-033

Filing Date: February 15, 2012

Docket No. 30,454

JACKSON CONSTRUCTION, INC.,
A New Mexico Corporation, and
PAUL JACKSON, Qualifying Party
for Jackson Construction Inc.,

       Petitioners-Appellees,

v.

GLENN R. SMITH, in his capacity of
Director, STATE OF NEW MEXICO
WORKERS' COMPENSATION
ADMINISTRATION,

       Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Jerry H. Ritter, Jr., District Judge**

Robert M. Doughty II, P.C.
Robert M. Doughty II
Alamogordo, NM

for Appellees

Workers' Compensation Administration
Roberta Y. Baca, Assistant General Counsel
Albuquerque, NM

for Appellant

## OPINION

**HANISEE, Judge.**

**{1}**     Paul Jackson is the sole owner of Jackson Construction, Inc. (JCI), a New Mexico-

1

licensed general contractor. JCI does not employ any workers or executives other than Mr. Jackson, who serves as JCI's president and sole board member. In 2008, Mr. Jackson affirmatively elected to exempt himself from coverage by the Workers' Compensation Act (the Act). We are asked to decide in light of Mr. Jackson's election, whether JCI remains subject to the Act and must nevertheless procure workers' compensation insurance. We hold that JCI is required to do so under a plain-meaning reading of NMSA 1978, Section 52-1-6(A) (1990), which states that the Act "shall apply to *all* employers engaged in activities requir[ing a construction license] . . . regardless of the number of employees." (Emphasis added.) We thus reverse the district court's decision and affirm the order of the Workers' Compensation Administration (the WCA).

## I. STANDARD OF REVIEW

**{2}** The issue on appeal concerns the scope of Section 52-1-6(A), which defines the classes of employers that are subject to the Act. We must ascertain whether the Legislature intended those classes defined in Section 52-1-6(A) to encompass construction corporations such as JCI, whose only employees are executives that have opted out of the Act's coverage. The issue is one of statutory construction, which we review de novo. *Republican Party of New Mexico v. New Mexico Tax. & Rev. Dep't*, 2010-NMCA-080, ¶ 8, 148 N.M. 877, 242 P.3d 444, *cert. granted*, 2010-NMCERT-008, 148 N.M. 943, 242 P.3d 1289. Our approach to statutory construction is to first examine the plain meaning of the statute at issue. If the plain meaning is clear—"not vague, uncertain, ambiguous, or otherwise doubtful"—we apply the statute as written, without second guessing the Legislature's selection from among competing policies or differing ways of effectuating a particular legislative objective. *State ex rel. Helman v. Gallegos*, 117 N.M. 346, 352, 871 P.2d 1352, 358 (1994).

## II. DISCUSSION

### A. The Plain Meaning of Section 52-1-6(A) Subjects JCI to the Act

**{3}** Section 52-1-6(A), reads as follows: "The provisions of the Workers' Compensation Act . . . shall apply to employers of three or more workers; provided that *act shall apply to all employers engaged in activities required to be licensed under the provisions of the Construction Industries Licensing Act . . . regardless of the number of employees.*" (Emphasis added.) There are two prongs to the portion of this section relevant to determining which construction entities are subject to the Act: (1) the entity must be an employer under the Act, and (2) the entity must engage in activities requiring a construction license. There appears to be no dispute that JCI meets the criteria under the second prong, in that JCI engages in activities requiring a properly maintained construction license. Accordingly, we focus our analysis on the first prong, whether or not JCI is an employer under the terms of the Act.

**{4}** The Act provides a definition of employer that states "'employer' includes any person or body of persons, corporate or incorporate . . . *employing workers* under the terms

2

of the Workers' Compensation Act." NMSA 1978, § 52-1-15 (1989) (emphasis added). The Act then defines worker as:

> As used in the Workers' Compensation Act . . . , unless the context otherwise requires, "worker" means any person who has entered into the employment of or works under contract of service or apprenticeship with an employer, except a person whose employment is purely casual and not for the purpose of the employer's trade or business. The term "worker" shall include "employee" and shall include the singular and plural of both sexes.

Section 52-1-16(A). Reading Section 52-1-6(A) within the context of the provided definitions, it is apparent that for a construction employer to be subject to the Act, it must employ at least one "worker." Applying the definition to the traditional form of third-party construction labor is straightforward enough. But applying the definitions to owners, shareholders, and executives of corporations proves more difficult. Given Section 52-1-6(A) and its one-worker requirement for construction companies, the question whether JCI is subject to the Act turns on whether Mr. Jackson can be counted as a worker. Because the Act does not itself resolve this question, we consider it to be ambiguous in this respect and must now ourselves determine when an officer, shareholder, or executive is considered a "worker" under the Act. *See N.M. Dep't of Health v. Compton*, 2001-NMSC-032, ¶ 18, 131 N.M. 204, 34 P.3d 593 (noting that when the court is confronted with legislative silence on a particular issue, we resort to other statutory construction aids, keeping in mind that our goal is to facilitate the operation of the act in question and any specified goals of the Legislature); *see also Sunwest Bank v. Nelson*, 1998-NMSC-012, ¶ 14, 125 N.M. 170, 958 P.2d 740.

**{5}** For guidance, we turn to *Garcia v. Watson Tile Works, Inc.*, 111 N.M. 209, 803 P.2d 1114 (Ct. App. 1990). *Garcia* provides an instructive framework for analyzing whether officers, shareholders or executives are counted as "workers" in determining if an employer is subject to the Act. *Garcia* recognized three distinct classes of personnel associated with entities potentially subject to the Act: (1) non-worker executives, (2) executive employees, and (3) workers. *Id.* at 210-11, 803 P.2d at 1115-1116. With respect to the first category, this Court held that non-worker executives are *not* to be counted in determining which employers are subject to the Act under Section 52-1-6(A). *Garcia*, 111 N.M. at 210, 803 P.2d at 1115. But executive employees and workers are to be counted—even when those executive employees use the opt-out provision as contained in NMSA 1978, Section 52-1-7 (2003). *Garcia*, 111 N.M. at 210-11, 803 P.2d at 1115-16 ("We note that subsection E of Section 52-1-7 specifically provides that those who elect not to be covered are nonetheless to be counted in determining whether the employer comes within the Act.").

**{6}** With respect to the case at bar, the record below supports the finding that Mr. Jackson is an executive employee. While the WCA's findings could be mistakenly construed to conclude that JCI had no workers—including Mr. Jackson, such an interpretation is contradicted by (1) the recitation of facts in both parties' briefs, (2) Mr.

3

Jackson's own affirmative election form, and (3) his testimony during the administrative hearing. The WCA's brief states, "[JCI] is comprised solely of one employee, Paul Jackson[.]" JCI's brief is also in accord, stating, "Paul Jackson considers himself as the 'executive employee' of [JCI.]" Additionally, Mr. Jackson signed and filed an affirmative election form with the WCA establishing that "I, PAUL DOUGLAS JACKSON, am a 'worker' as defined in [the Act, and] I am employed by JACKSON CONSTRUCTION, INC[.]" And finally, Mr. Jackson's own testimony before the WCA maintained his position that he is the "executive employee" of JCI. Given the substantial evidence in the record and the absence of any to the contrary, we think the more accurate construction of the WCA's findings is that JCI did not employ any workers apart from Mr. Jackson. As an actual employee, Mr. Jackson would therefore not fall under the class of executives recognized in *Garcia* as non-workers.

**{7}** JCI largely agrees that Mr. Jackson is an executive employee and that a reading of the plain language of Section 52-1-6(A) in concert with Section 52-1-7 would result in Mr. Jackson being counted to determine JCI's one-worker status. JCI instead focuses its argument on two related points: (1) Mr. Jackson's affirmative election form should exempt him from being considered as JCI's worker, as a matter of policy, and (2) a reading of the plain language of the statute would contravene legislative intent and result in an absurdity (i.e. requiring entities to maintain insurance, even when their only qualifying employee has elected to forego coverage). We are not persuaded by either argument.

**B. An Executive Employee Affirmative Election Does Not Exempt the Employer From Being Subject to the Act**

**{8}** JCI's argument that Mr. Jackson's affirmative election form should exempt him from being considered as JCI's worker is based on the following two rationales: (1) the definition of employer includes an inherent requirement that qualifying workers "be covered by workers' compensation insurance," and (2) Mr. Jackson is the sole shareholder of JCI and should be treated as a sole proprietor, rather than an employee. While we agree that the definition of employer requires that the entity "employ[] workers under the terms of the Workers' Compensation Act," we disagree that the language requires that *all* counted workers actually be eligible for workers' compensation insurance coverage. Section 52-1-15.

**{9}** There are several instances in which a worker is counted to determine whether an employer is subject to the Act but is not ultimately covered under the Act's provisions. *See, e.g.*, *Howie v. Stevens*, 102 N.M. 300, 302, 694 P.2d 1365, 1367 (Ct. App. 1984) (recognizing that an illegally employed minor would presumably be counted to determine application of the Act to the employer but has the right to circumvent the Act's coverage and pursue remedies in tort), *Garcia*, 111 N.M. at 211, 803 P.2d at 1116 (holding that past employees who were regularly employed are still to be counted to determine worker minimums even though those workers are now no longer employees and thus ineligible for coverage). But the most important example is contained in Section 52-1-7(E) itself, which

4

mandates that executive employees are to be counted, even if they have "filed an affirmative election not to be subject to [the Act]."

{10} JCI argues for a construction of Section 52-1-7(E) that would limit its reach to only those non-construction employers with three or more workers. We disagree that Section 52-1-7(E) is meant to apply so narrowly. As discussed above, construction employers must also employ a specific number of workers to be considered employers—at least one. Furthermore, the two clauses of Section 52-1-6(A) are contained in the same sentence, and the Legislature has provided no structural evidence that they are to be read separately. Finally, Section 52-1-7(E) contains no express language indicating that its reach only applies to one clause of the sentence contained in Section 52-1-6(A), but not the other. Rather than re-structuring the Legislature's language in such a result-oriented manner, we give it its plain import: Executive employees may exempt themselves from coverage but are still counted in determining whether their employer is subject to the Act.

{11} As for JCI's second point in support of its contention that Mr. Jackson's affirmative election form should exempt it from coverage, we are similarly unpersuaded. JCI goes to great lengths, as did the district court below, to analogize Mr. Jackson's corporate position as sole shareholder and lone employee to that of a sole proprietor. While we have no precedent suggesting why such an analogy should matter, both JCI and the district court rely for support on a past decision of the Second Judicial District Court, *Jogi v. New Mexico Workers' Comp. Admin.*, No. CV 2007-08948, slip op. (N.M. Dist. Ct. Feb. 29, 2008). We remind counsel that decisions of the district court, even in their appellate capacity, have no precedential effect in this Court. *Inc. Cnty. of Los Alamos v. Montoya*, 108 N.M. 361, 364, 772 P.2d 891, 894 (Ct. App. 1989) ("Unpublished case law from state district or federal courts is instructive, but not binding on this court."). This is true even where, as in *Jogi*, this Court subsequently denied a petition for writ of certiorari. *State v. Myers*, 2011-NMSC-028, ¶ 25, 150 N.M. 1, 256 P.3d 13 (stating that a denial of a writ for certiorari does not "indicate any affirmation or adoption of law" and has no precedential value).

{12} Without suggesting any approval for the decision rendered in *Jogi*, we note that its facts are distinguishable from those in the case before us. In *Jogi*, a sole proprietor named Bjorn Jogi operated the construction company Bjorn Construction. The company never employed any workers other than Mr. Jogi, who affirmatively elected to exempt his company from the Workers' Compensation Act. After an administrative hearing, the WCA found Bjorn Construction subject to the Act. Mr. Jogi appealed to the Second Judicial District Court, which reversed and held that Bjorn Construction was *not* an employer under the Act.

{13} While there are similarities between Mr. Jogi's sole-proprietor-run construction company and Mr. Jackson's solely owned and operated construction corporation, the affirmative election forms filed in each case are distinct and appear to seek entirely different legal ends. Mr. Bjorn's affirmative election form was entitled, "Exemption for Construction Industry Licensees Who Are Not Employers (Sole Proprietors or Partners)," which appears to affirm that Bjorn Construction is not to be considered an employer. Mr. Jackson's form

on the other hand, was entitled "New Mexico Executive Employee Affirmative Election Form," which appears to exempt only Mr. Jackson from coverage, not JCI as a whole.

{14} The difference is likely rooted in the legal distinction between sole proprietorships and corporations. A "corporation is a legal entity, separate from its shareholders, directors, and officers[, who] are not personally liable for the acts and obligations of the corporation." *Stinson v. Berry*, 1997-NMCA-076, ¶ 17, 123 N.M. 482, 943 P.2d 129. While a sole proprietor is simply "a single individual who owns all the assets of a business, is solely liable for its debts and employs in the business no person other than himself." Section 52-1-7(F)(2). We thus remain unconvinced that the reasoning used in *Jogi* should be imported to the case at bar.

## C. The Interpretation of the Statute Is Neither Absurd nor Contrary to Legislative Intent

{15} JCI's final argument is that the provision of the act that requires companies to provide coverage for injured workers—whose only employees are exempt from coverage—to nonetheless procure insurance, is absurd and does not serve the Legislature's purpose. The argument fails for at least two reasons: (1) the coverage is not superfluous as JCI asserts, and (2) rational policy arguments exist for the Legislature's adoption of a bright-line rule that subjects *all* construction employers to the Act.

{16} Contrary to JCI's assertion that requiring construction corporations like itself to obtain coverage would contravene legislative intent, we point to several instances in which such coverage would be useful and protective of workers. As Mr. Jackson acknowledged during his administrative hearing before the WCA, if a construction-related accident occurred and his subcontractor was not in compliance with the Act, JCI as general contractor could be held liable to the injured worker under certain circumstances. Related to this point, Mr. Jackson also acknowledged that he did not routinely execute formal contracts with his subcontractors, nor did he ensure definitively that his subcontractors carried the required workers' compensation coverage. Second, situations can develop between a general contractor and a subcontractor, such that the general contractor inadvertently becomes a "constructive employer" of the subcontractor's employees. *See Harger v. Structural Servs., Inc.*, 121 N.M 657, 660-61, 916 P.2d 1324, 1327-28 (1996) (recognizing the creation of "constructive employer[s]" under NMSA 1978, Section 52-1-22 (1989)).

{17} With respect to JCI's assertion that our construction of Section 52-1-6(A) results in an absurdity, we point to rational policy arguments in support of such a rule. The Legislature's decision to adopt a rule that requires a heightened standard of participation by small construction employers can be attributed to the inherent dangerousness of construction activity. While we cannot know for certain that our Legislature's focus was to address dangerousness due to the lack of subject-specific legislative history in New Mexico, other States have cited that rationale as supporting similar changes to their own workers' compensation acts. *See, e.g.*, *Ficocelli v. Just Overlay, Inc.*, 932 So.2d 1230, 1233 (Fla.

6

Dist. Ct. App. 2006) ("[I]n 1989, the legislature extended coverage to employees of construction industry employers who employ one or more employees . . . to ensure that workers performing inherently dangerous work in the construction industry would be covered, even when they are working for small employers[.]"). Interestingly, the changes in our own Act requiring increased participation by small construction companies occurred shortly after the change by the Florida legislature. *See* § 52-1-6 ("[E]nacted by Laws 1990 (2nd S.S.), ch. 2, § 4."). Finally, such a rationale certainly supports the election by our Legislature to focus on the nature of a business's activity—construction—rather than its size, and can be seen as neither absurd nor contrary to the Act's purposes.

## VI.    CONCLUSION

**{18}**    We construe Section 52-1-6(A) to require all incorporated construction employers to abide by the strictures of the Act, even those who employ only executive employees that have elected to individually opt out of coverage under Section 52-1-7. We thus reverse the district court and affirm the WCA's determination that JCI as a construction employer is subject to the Act and must procure the required workers' compensation insurance.

**{19}    IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**LINDA M. VANZI, Judge**


_____
**TIMOTHY L. GARCIA, Judge**

**Topic Index for *Jackson Construction, Inc. v. Smith*, No. 30,454**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |
| ST-LI | Legislative Intent |
| ST-RC | Rules of Construction |
| | |
| **WC** | **WORKERS COMPENSATION** |
| WC-EC | Elective Coverage |
| WC-IC | Independent Contractor |

WC-SE  Scope of Employment
WC-SF  Self Insurance
WC-WG  Workers' Compensation, General